MOTORISTS MUTUAL INSURANCE CO., APPELLANT AND
CROSS-APPELLEE, *v.* TRAINOR, A MINOR, ET AL., APPELLEES
AND CROSS-APPELLANTS.

42

(No. 72-376—Decided March 28, 1973.)

*Messrs. Weston, Hurd, Fallon, Sullivan & Paisley, Mr. Mark O'Neill, Messrs. Williams & Batchelder* and *Mr. William G. Batchelder, Jr.*, for appellant and cross-appellee.

*Messrs. Griesinger & Jeandrevin, Mr. John T. Jeandrevin, Messrs. Skidmore & Hall* and *Mr. Thomas Skidmore,* for appellees and cross-appellants.

CELEBREZZE, J.   Motorists, prior to June 7, 1966, had issued its Homeowners Policy No. H-70.175802 to John D. Trainor, Jr., and Kathryn J. Trainor, husband and wife, and parents of Michael T., a minor, which policy, in pertinent part, provided as follows:

"COVERAGE E—PERSONAL LIABILITY:

"(a) LIABILITY: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * and the company shall defend any suit against the insured alleging such bodily injury * * * and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.

"* * *

"Section II of this policy does not apply:

"* * *

"(c) Under coverages E * * * to bodily injury * * * caused intentionally by or at the direction of the insured * * *.

"* * *

"Insured: The unqualified word 'insured' includes (1) the named insured and (2) if residents of his household * * * any other person under the age of twenty-one in the care of an insured."

Although the policy between the Trainors and Motorists provides that "the company *shall* defend any suit against the insured" (emphasis added), the Common Pleas Court and the Court of Appeals have well stated that the law does not require an insurer to waive its contract rights when it has a duty to defend, as follows:

"The plaintiff Motorists Mutual Insurance Company is obligated to defend the Trainors in the Harvilla action

\* \* \* in good faith toward its insured, without waiving its right to assert at any later time the policy defenses it believes it has."\*

Motorists could reserve its right through a bilateral nonwaiver agreement with the Trainors, or through a unilateral reservation of rights. It chose to try to set up a bilateral nonwaiver agreement even though the petition alleged a pure negligence action. The manner in which the following letters to the Trainors were drafted made clear the insurer's intent that it would not defend unless this agreement was reached:

"If you are agreeable to our proceeding under a reservation of rights \* \* \* the company will go into the defense of this case \* \* \*. It would have to be agreed to on your part that the company is reserving its right *to withdraw from this case at any time before or after judgment is taken,* without thereby incurring any liability for any judgment which might result." (Emphasis added.) (First letter from Motorists' chief counsel to Trainors.)

"\* \* \* I do not feel free, however, to have our counsel \* \* \* appear in this case until I have heard from you." (Second letter from Motorists' chief counsel to Trainors.)

This conduct represented neither a bilateral nonwaiver agreement nor a unilateral reservation of rights. A bilateral nonwaiver agreement disclaims liability under the terms of the policy, reserves to each party his respective rights, and provides that the insurer will defend the suit at its own expense, and that nothing which is done under the agreement will be deemed to constitute a waiver of his respective rights. A unilateral reservation of rights is a notice given by the insurer that it will defend the suit, but reserves all rights it has based on noncoverage under the policy.

The Trainors failed to answer those letters and the

---

\*See *Bloom-Rosenblum-Kline Co.* v. *Union Indemnity Co.* (1929), 121 Ohio St. 220; *Burger* v. *Continental Nat. American Group* (1971), 32 Ohio Misc. 161; *Socony-Vacuum Oil Co.* v. *Continental Cas Co.* (1945), 144 Ohio St. 382. See, also, 49 A. L. R. 2d 694.

case went to default. The Trainors were under no obligation to assent to or deny the alleged nonwaiver agreement. The policy and the tenor of the Harvilla petition gave them a clear right to expect a defense by the insurer, and the Trainors had paid a premium for this service. The insurer demanded that the Trainors do more than the policy required.

Motorists gave no reservation-of-rights notice. There is no way of knowing what the Trainors might have done in that situation. It was only after Motorists had allowed the case to go to default, and the Trainors, because of Motorists' conduct, had been forced to obtain the services of an attorney, that the Trainors, upon advice of counsel, informed Motorists that they were holding it to its duty to defend and that they would hold it liable for any judgment that might be rendered against them, and for their attorney fees.

Motorists persistently asserted that it need not act until the Trainors responded, while the time for answer passed. This failure to act on the part of Motorists was a breach of its duty to defend. *Lessak* v. *Metropolitan Cas. Ins. Co.* (1958), 168 Ohio St. 153; *Socony-Vacuum Oil Co.* v. *Continental Cas. Co., supra* (144 Ohio St. 382); *Bloom-Rosenblum-Kline Co.* v. *Union Indemnity Co., supra* (121 Ohio St. 220).

Motorists took the litigious course of filing the within action for declaratory judgment; then, upon trial, stipulated its responsibility to defend, which had been its requested relief, and asked the trial court to make a determination of its rights to pay under the policy before the negligence action was litigated. This course of conduct is hardly what either side bargained for under the terms of the policy. The Trainors had the right to a prompt and diligent defense under this contract.

We determine that Motorists had a duty to defend, and failed to carry out that duty. It is from this lack of action on the part of Motorists and the declaratory judgment action which it filed, that the trial court and the Court of

Appeals allowed the Trainors' expenses, including attorney fees incurred in the defense of both actions.

The usual rule in Ohio with respect to attorney fees can be found in *Gates* v. *Toledo* (1897), 57 Ohio St. 105, 48 N. E. 500, denying their recovery when the action is for breach of contract.

However, an exception to that general rule has developed when an insurer wrongfully refuses to defend an action against its insured. *Socony-Vacuum, supra* (144 Ohio St. 382). See, also, 49 A. L. R. 2d 694, Section 14, for annotations of other jurisdictions.

Although there is some difference of opinion in cases dealing with declaratory judgments brought by an insurer against its insured, we conclude that the insured herein is entitled to recover reasonable attorney fees. This action was brought to serve the sole interest of the insurer and arises out of Motorists' basic unwillingness to defend a suit in which it had a clear legal duty to defend, which even Motorists ultimately acknowledged. The rationale behind allowing attorney fees to date in defending the negligence action is that the insured must be put in a position as good as that which he would have occupied if the insurer had performed its duty. The fact that the insurer brings a declaratory judgment action after it has failed in its duty to defend should not require the insured to incur expenses which he cannot recover. *National Indemnity Co.* v. *Harper* (D. C. Mo. 1969), 295 F. Supp. 749; *Johnson* v. *General Mutual Ins. Co.* (1967), 28 App. Div. 2d 945, 281 N. Y. Supp. 2d 612; *Southwestern Bell Tel. Co.* v. *Western Cas. & Surety Co.* (1967), 269 F. Supp. 315.

Finally, the Trainors argue that Motorists should pay additional attorney fees and expenses because of the conflict of interest which they say will be inserted in the forthcoming negligence action.

"When an insurer acts in good faith and considers the welfare of the insured as well as its own, there is no real or substantial conflict of interest." 1 Long, Law of Liability Insurance, Section 5.06. See *Farm Bureau Mut.*

*Auto Ins. Co.* v. *Violano* (Cir. 2, Vt. 1941), 123 F. 2d 692, certiorari denied, 316 U. S. 672.

The judgment of the Court of Appeals is reversed as to its finding of a conflict of interest under the facts presently before us and is affirmed as to the balance of its judgment.

*Judgment affirmed in part and reversed in part.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and W. BROWN, JJ., concur.

PAUL W. BROWN, J., dissenting in part. I concur with paragraphs one and two of the syllabus. I dissent from paragraphs three and four of the syllabus and from that part of the judgment which permits the award of attorney fees. The facts do not indicate that the insurer sought to excuse itself from the duty to defend. The facts indicate that the insurer sought consent to defend under reservation of right. Generally, the insurer waives policy defenses if it defends without notifying the insured of its reservation of rights. 7A Appleman Insurance Law and Practice 515. Nor may the insurer reserve its rights and be entitled to defend under such circumstances without the acquiescence or consent of the insured. 38 A. L. R. 2d 1142, at 1176, 1177. *Schmidt* v. *Natl. Auto. & Cas. Ins. Co.* (1953), 207 F. 2d 301, 38 A. L. R. 2d 1142.

The majority opinion herein states:

"* * * Finally, on November 23, after demanding that Motorists defend, and informing it that it would be held liable for attorney fees, expenses and possible judgment, the Trainors' private counsel undertook the defense of the negligence action."

That statement fails to include the fact that the demand was that Motorists defend *without reservation.*

I conclude that neither the request that the insured indicate its consent to the defense by the plaintiff nor the action for declaratory judgment under these circumstanc-

es constitutes a breach of the contractual provisions of the policy requiring the insurer to defend the action.

That is to say, the insurer in such cases has an option to defend, without reservation, thus waiving any claimed coverage defense, or to notify the insured of its willingness to defend under a reservation of rights. In the latter event, the insured has an option to acquiesce, to indicate express consent to defend under a reservation of rights, or to deny consent. Here, the insured sought to make consent dependent upon withdrawal of the reservation of rights, thus conditionally refusing consent.

That position denies the insurer the right recognized by this court in paragraph one of the syllabus herein. It follows, on the admitted facts, that the majority wrongly bottoms its affirmance on a determination that the insurer has "wrongfully refused to defend." In my opinion, it is clear from the record that not only did the insurer not refuse to defend, but that the insured simply refused to permit that defense under a reservation of rights.

Under all the circumstances, I see no legal entitlement to an award of attorney fees at this point. This declaratory judgment action does not differ from other such actions which seek to define rights and duties under other contracts of insurance. In those cases, fees are not allowed. The majority opinion cites as authority for the allowance of attorney fees an annotation in 49 A. L. R. 2d 694. That annotation, at page 698, expressly excludes from its scope cases involving the question whether the action of the insurer constitutes a refusal to defend and points out that a further limitation of the scope of the annotation is that its cases concern only "absolute and unequivocal refusal."

I concur in that part of the judgment which reverses the finding of the Court of Appeals that a patent conflict of interest exists disqualifying the insured from its right to defend the negligence action.