KOENIG, APPELLEE AND CROSS-APPELLANT, *v.* CITY OF DAYTON, APPELLANT AND CROSS-APPELLEE.

(No. 8933 — Decided December 3, 1985.)

*Irving I. Saul,* for appellee.

*Turrell & Phillips Co., L.P.A.,* *Roger B. Turrell* and *Stanley S. Phillips,* for appellant.

KERNS, J. On February 21, 1980, the plaintiff, J.J. Koenig, was a police officer employed by the defendant, city of Dayton, when he participated in a drug raid at 920 West Hillcrest in Dayton, Ohio. During the raid, Thomas L. Denny

was observed with a gun in his hand, at which time Officer Koenig, in the performance of duty, shot and killed him. Subsequently, it was learned that Koenig used a hollow-point bullet, which was a type of ammunition proscribed by the regulations of the Dayton Police Department.

On February 19, 1981, the Administratrix of the Estate of Thomas Denny filed an action for wrongful death against J.J. Koenig and the city of Dayton, but the city was later dismissed under the sovereign immunity doctrine. Thereafter, the remaining defendant, Koenig, claimed that the city was obligated to defend him under a collective bargaining agreement between the city and the Fraternal Order of Police, but the city refused to provide representation for Koenig claiming that he was in violation of policies forbidding the use of hollow-point ammunition. As a result, Officer Koenig was obliged to use legal counsel furnished by the Fraternal Order of Police. Eventually, the case against Koenig proceeded to a verdict and judgment in his favor.

Subsequently, the plaintiff, through the grievance and arbitration process provided for in the Fraternal Order of Police contract, filed a grievance against the city of Dayton. The grievance was denied at the early stages, and when it came to the arbitration level, neither Officer Koenig nor the Fraternal Order of Police filed a request for arbitration in the allotted time.

The plaintiff commenced the present action alleging that he was denied legal representation from the city of Dayton and seeking attorney fees for both the wrongful death action and this action, as well as punitive damages, and damages for serious emotional distress. At the trial, the court of common pleas found, as a matter of law, that Koenig was entitled to reasonable attorney fees and expenses for both the *Denny* case and this case, and the court submitted the issue of whether the city inflicted serious emotional distress on the plaintiff to the jury for its determination. However, the court refused to instruct the jury upon the issue of punitive damages.

On April 23, 1984, the jury awarded attorney fees and expenses for the defense of the *Denny* case in the amount of $21,025, attorney fees and expenses for the instant suit in the amount of $29,475, and attorney fees and expenses in connection with the claim for emotional distress in the amount of $10,500. The jury also awarded Koenig the sum of $24,000 for severe emotional distress, thus bringing the total verdict to the amount of $85,000. On June 4, 1984, the court rendered a written decision overruling a defense motion for judgment notwithstanding the verdict, and thereafter, both the city of Dayton and Koenig filed timely notices of appeal to this court.

The city of Dayton has submitted five assignments of error, the first of which has been stated as follows:

"1. The trial court erred in ruling that an arbitration in which Koenig appealed the city's decision not to furnish him counsel in Case No. 81-492, the Denny case, was not dispositive of the issue."

On August 2, 1983, the trial court rendered a comprehensive written decision in overruling the motion of the city to dismiss Koenig's amended complaint, and for the reasons set forth therein, the first assignment of error must be overruled. Among other things, the trial court made the following observations in its analysis of the issue posed by the alleged error:

"The city and the F.O.P. entered into two separate agreements, the collective bargaining agreement (F.O.P. contract) and the professional liability insurance agreement, on August 26, 1977, and June 10, 1978, respectively. The latter agreement replaced an in-

surance contract between the city and American Home Assurance Company for professional liability insurance coverage of the F.O.P. members. The policy expired on June 10, 1978, at which time the city assumed the policy pursuant to the option to self-insure in Article XVII of the F.O.P. contract. * * *

"For the city to prevail, examination of the F.O.P. contract must reveal that the parties did intend for the arbitration clause in the F.O.P. contract to include disputes arising under the insurance agreement at the time the F.O.P. contract was signed. * * *

"The relevant provisions of the F.O.P. contract do not manifest the intention necessary to support the city's premise. Article XXIII states in Step 5 of Section 3 that only a grievance as defined in the first paragraph of Section 3 may be taken to arbitration. 'Grievance' is defined as 'any complaint that Management has violated *this Agreement.*' [Emphasis *sic.*] * * *

"* * * The grievance did not involve the existence of the insurance policy or the city's duty to provide the insurance through either independent underwriters or self-insurance * * *. Rather, the plaintiff's grievance and amended complaint concerns [*sic*] the duty of the city, as self-insurer, to defend him according to the terms of the insurance agreement. The duty to defend arises under the insurance agreement, not the F.O.P. contract as such * * *.

"* * * To support the city's argument that the dispute is arbitrable, the court would have to incorporate the terms of the applicable insurance policy, a separate contract, into the F.O.P. contract. * * *"

As further noted by the trial court, the F.O.P. contract does not expressly incorporate the terms of the insurance policy to the extent that violations of the terms of the policy by the insurer were tantamount to violations of the principal contract by management, but the F.O.P. contract does provide that "[t]he arbitrator shall have no power to add to, subtract from or change any of the provisions of this agreement." As heretofore indicated, therefore, we agree with the conclusion of the trial court.

The second assignment of error has been presented as follows:

"2. The trial court erred in holding as a matter of law that plaintiff was entitled to recover his costs including reasonable attorney fees in both the instant case and the Denny case."

At the outset, we note that the attorney fees and expenses awarded in this case exceed the amount actually collected, and this fact alone tends to expose the vulnerability of the alleged error. However, aside from this observation, an exception to the general rule denying attorney fees when the action is for breach of contract has been adopted where an insurer wrongfully refuses to defend an action commenced against its insured. *Motorists Mutual* v. *Trainor* (1973), 33 Ohio St. 2d 41 [62 O.O.2d 402], paragraph four of the syllabus. In fact, the duty to defend imposed upon insurers was even broadened to some extent in the recent case of *Willoughby Hills* v. *Cincinnati Ins. Co.* (1984), 9 Ohio St. 3d 177, where the syllabus provides as follows:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

In the present case, the city, which was acting as a self-insurer for police professional liability insurance, mildly suggests that it is not an insurer in the same sense as an insurance company.

However, a similar argument was discounted in *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122, where the court concluded as follows:

"When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor." *Id.* at paragraph two of the syllabus.

In that case, as in this one, the responsible party failed in its duty to defend, and this failure should not require Koenig to incur expenses which he cannot otherwise recover. *Socony-Vacuum Oil Co.* v. *Continental Cas. Co.* (1945), 144 Ohio St. 382 [29 O.O. 563]. In all such contract cases, the rationale behind allowing attorney fees is to place the insured in the position he would have occupied if the insurer had performed its duty. *Allen* v. *Standard Oil Co., supra,* at 125. The second assignment of error is overruled. (Cf. R.C. 2744.07, effective Nov. 20, 1985.)

The third assignment of error has been framed by the city as follows:

"3. The trial court erred in holding that plaintiff, Koenig, might recover damages for serious emotional distress, and in overruling defendant's motion for directed verdict on that issue."

On April 13, 1983, the Supreme Court of Ohio held for the first time that a cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury. *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131. Later, in *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, the court described serious emotional distress as an emotional injury which is both severe and debilitating, and in so doing, the court also held that the emotional injuries sustained must be found to be both serious and reasonably foreseeable. Then, in *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, the Supreme Court concluded that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *."

In the *Yeager* case, *supra,* at 374-375, the court gave some insight into the language "extreme and outrageous" when it quoted extensively from 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d,* where the text provides as follows:

"* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.* * *"

More recently, in *Reamsnyder* v.

*Jaskolski* (1984), 10 Ohio St. 3d 150, the Supreme Court reaffirmed its recognition of a cause of action for the intentional infliction of emotional distress and again commented upon the extreme, atrocious, and intolerable conduct which must be shown to support such an action. Furthermore, it was specifically noted by the minority, *id.* at 155, in that four-three decision that the validity of a cause of action based upon the intentional or reckless infliction of serious emotional distress necessarily must be gauged by the objective standards of the community.

In the case of *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, at paragraph four of the syllabus, the court alluded to four elements which must be proved in order to recover damages for the intentional infliction of serious emotional distress:

"* * * [1] that the actor either intended to cause emotional distress or knew or should have known that [the] actions taken would result in serious emotional distress * * *; * * * [2] that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; * * * [3] that the actor's actions were the proximate cause of the plaintiff's psychic injury; and * * * [4] that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure * * *."

The conditions imposed in the *Pyle* case fairly epitomize the views adopted by the Supreme Court of Ohio in the *Yeager* and *Reamsnyder* cases, as well as the attitude reflected by most other jurisdictions and, accordingly, we have tested the evidence in the present case as it relates to those requirements.

As to the third and fourth conditions, the evidence, when construed most favorably to the plaintiff, is questionable, but assuming that the evidence as to those two conditions was sufficient to overcome the motion, we are nonetheless convinced that the overall evidence was totally inadequate to sustain the first and second elements of the cause of action.

According to the evidence, Officer Koenig was able to continue with his employment, and he apparently had no psychiatric or medical treatment at all for his serious emotional distress. Furthermore, the evidence is not susceptible, in our opinion, to a finding that the city of Dayton, through its employees, reasonably could have foreseen, or even suspected, that its actions would result in *serious* emotional distress. On the contrary, the undisputed evidence discloses that the defendant's actions were prompted by a desire to maintain respect for its rules and regulations, control over its police officers, and enforcement of its disciplinary procedures. And while the city's conduct was probably ill-advised, indiscreet, and highly inconsiderate, it was not by objective standards " '* * * so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.* * *' " See *Yeager* v. *Local Union 20, supra,* at 375.

In the workaday world, almost any breach of contract, exposure to liability, or mere involvement in a lawsuit, can be maddening and distressing, but such emotional upset does not necessarily provide the basis for another legal action. Here, the evidence is insufficient to support the allegations that the city of Dayton intentionally or recklessly caused serious emotional distress to the plaintiff, and the motion for a directed verdict should have been sustained. The third assignment of error is well-taken.

The fourth assignment of error has been presented by the city as follows:

"4. The trial court erred in holding that the city was not immune from suit in an alleged tort claim."

This alleged error is overruled upon the authority of *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, where paragraph one of the syllabus provides as follows:

"The judicially created doctrine of municipal immunity is, within certain limits, abolished, thereby rendering municipal corporations subject to suit for damages by individuals injured by the negligence or wrongful acts or omissions of their agents or employees whether such agents and employees are engaged in proprietary or governmental functions.* * *" (Cf. R.C. Chapter 2744, effective Nov. 20, 1985.)

As may be noted, the ruling in the *Enghauser* case goes well beyond the negligence-based facts that spawned it. It also explicitly encompasses "wrongful acts or omissions," and the present action was, by its own terms, based upon the wrongful acts and omissions of the city of Dayton.

The fifth assignment of error has been set forth as follows:

"5. The trial court erred in not sustaining defendant's motions to reopen its case and for new trial."

In this appeal, both sides are apparently in agreement that any decision as to the reopening of a case invokes the discretionary authority of the trial court, and under all of the circumstances existing at the time of the motion, the record reflects no semblance of an abuse of discretion. Hence, the fifth assignment of error is without merit and will be overruled.

In addition to the five assignments of error submitted by the city of Dayton, the cross-appellant, J.J. Koenig, has stated his single assignment of error as follows:

"1. The trial court committed prejudicial error in withdrawing the issue of punitive damages from the jury."

According to the Restatement of the Law 2d, Torts, as quoted favorably in the case of *Yeager* v. *Local Union 20,*

*supra,* at 374-375, "extreme and outrageous conduct" contemplates something more than a degree of aggravation which would entitle the plaintiff to punitive damages for another tort; but even so, this court must give way to the pronouncement of the Supreme Court of Ohio in *Ranells* v. *Cleveland* (1975), 41 Ohio St. 2d 1 [70 O.O.2d 1], where the court stated simply that "[i]n the absence of a statute specifically authorizing such recovery, punitive damages can not be assessed against a municipal corporation."

In reaching its conclusion, the Supreme Court relied (*id.* at 6-7) to some extent upon the rationale of *Chappell* v. *Springfield* (Mo. 1968), 423 S.W. 2d 810, at 814, where the court observed as follows:

"The theory that punitive damages serve as a deterrent to others adds little justification for the award against a municipality. It is assumed that public officials will do their duty, and if discipline of a wrongdoing municipal employee is indicated, appropriate measures are available through the electorate, or by superior officials responsible to the electorate, without recourse to punitive awards through the courts."

In our opinion, any allowance of punitive damages against a municipal corporation would unjustifiably punish innocent taxpayers and citizens and thus contravene public policy. The alleged error is overruled. (Cf. R.C. 2744.05[A], effective Nov. 20, 1985.)

Reverting again to the third assignment of error, as submitted by the city of Dayton, the record discloses that an interrogatory was submitted to the jury, the answer to which points out that $10,500 of the total award of expenses and attorney fees for representation in the present case was for attorney fees and expenses in connection with Koenig's claim and damages in the amount of $24,000 for serious emotional distress. Hence, the specific amount of

$34,500, as it relates to the third assignment of error, is severable from the total verdict of $85,000 rendered by the jury in the case.

Accordingly, the verdict will be reduced to $50,500, and as so modified, the judgment of the court of common pleas will be affirmed.

*Judgment accordingly.*

BROGAN, P.J., and HOFSTETTER, J., concur.

HOFSTETTER, J., retired, of the Eleventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.