**Continental Insurance Co.**
**v.**
**Dairy Farm Leasing Co., Inc.**
*[Cite as 4 AOA 213]*

*Case No. 89WM000005*
*Williams County, (6th)*
*Decided June 1, 1990*

*Cormac B. DeLaney, for Appellant/Cross-Appellee.*

*M. Donald Carmin, for Appellee/Cross-Appellant.*

*James E. Hitchcock, for Appellees.*

ABOOD, J.

This is an appeal from a judgment of the Williams County Court of Common Pleas denying appellant/cross-appellee Continental Insurance Company's motion for summary judgment and granting defendant-appellee/cross-appellant Dairy Farm Leasing Co., Inc. and appellees Norman and Linda Kimpel's motions for summary judgment and entering declaratory judgment in their favor against appellant. Appellant has appealed setting forth the following assignment of error:

"THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT CONTINENTAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN GRANTING DEFENDANT-APPELLEE DAIRY FARM LEASING COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT, BY HOLDING THAT DAIRY FARM LEASING HAS COVERAGE FOR ALL CLAIMS OF DEFENDANT-APPELLEE [sic] NORMAN L. AND LINDA L. KIMPEL UNDER EITHER THE 1979 OR 1982 POLICY OF INSURANCE IN *KIMPEL VS. DAIRY FARM LEASING CO., ET AT.,* CASE NUMBER 24628, COURT OF COMMON PLEAS OF WILLIAMS COUNTY, OHIO."

Appellee/cross-appellant Dairy Farm Leasing Co., Inc. ("Dairy Farm") has also set forth one assignment of error:

"THE TRIAL COURT ERRED IN DETERMINING 'THAT DAIRY FARM LEASING COMPANY NOT RECOVER ITS ATTORNEY FEES EXPENDED IN THE DEFENSE OF THIS DECLARATORY JUDGMENT ACTION AND ANY SUMS EXPENDED IN THE DEFENSE OF CASE NO. 24628 STYLED: KIMPEL v. DAIRY FARM LEASING COMPANY, ET AL'."

The undisputed facts giving rise to this appeal are as follows. On or about August 1, 1979, appellant issued a comprehensive general liability insurance policy, No. SMP 6902900, to Dairy Farm which policy covered the period from August 1, 1979, to August 1, 1982. A renewal

policy numbered SMP 37274609 was issued for the period from August 1, 1982, to August 1, 1985. On March 16, 1981, appellee Norman Kimpel assumed a lease of ten dairy cows which had originally been leased from Dairy Farm to a James Cardinal. On June 2, 1981, a second lease agreement for twenty dairy cows was entered into between appellees Norman and Linda Kimpel and Dairy Farm. After the delivery of the cows under the second lease, it was determined that some of them were infected with chlamydia. Those cows so infected were replaced by Dairy Farm and adjustments made to the lease agreement. The Kimpels continued to experience difficulties with the cows that they had leased in June 1981, however, and on December 22, 1982, one was sent to a laboratory for testing. On January 14, 1983, it was determined that the cow was infected with Johne's disease, which is an incurable and potentially fatal disease. Thereafter, the cows began to die. The Kimpels filed suit against Dairy Farm alleging, *inter alia,* that Dairy Farm was negligent in providing the diseased cows, that Dairy Farm had breached the lease by providing these cows and that Dairy Farm had breached certain implied warranties. The Kimpels requested damages for decreased milk production, for a decrease in the value of their farm and for injury to their other stock caused by the diseased cows.

Dairy Farm notified appellant of the suit brought by the Kimpels and demanded that appellant provide a defense and coverage for any judgment, up to the policy limits. Appellant denied coverage and declined to provide a defense. On February 25, 1987, appellant filed a declaratory judgment action against Dairy Farm and the Kimpels seeking a determination that, pursuant to the insurance policy in effect from 1979 to 1982, it had no obligation to defend or reimburse Dairy Farm for the claims asserted by the Kimpels. On March 13, 1987, the Kimpels filed their answer and a counterclaim alleging that, pursuant to the terms of the policy in effect from 1982 to 1985, there was coverage provided for the leasing operations.

On March 23, 1987, Dairy Farm filed its answer and counterclaim alleging that the policy issued did cover all or part of the claims of the Kimpels and therefore appellant was required to defend and provide coverage. Dairy Farm also requested recovery of attorney fees expended in the defense of the declaratory judgment action and in defense of the claims brought by the Kimpels.

On December 31, 1987, Dairy Farm filed a motion for summary judgment asserting that it was entitled to summary judgment on its counterclaim against appellant. In support of its motion for summary judgment, Dairy Farm argued that the policy issued and in effect from August 1, 1979, through August 1, 1982, did provide complete operations and product liability coverage as well as contractual liability coverage encompassing any contract or agreement related to the conduct of its business. Dairy Farm argued further that none of the exclusions set forth in the policy operate to exclude coverage for the Kimpels' claims against it. Dairy Farm emphasized that it was only requesting coverage for the consequential damages claimed by the Kimpels, including the decline in milk production, the decline in the value of the farm and the damage to the other cows owned or leased by the Kimpels, and not for the value of the diseased cows. Dairy Farm argued additionally that the policy that was in effect from 1982 to 1985 covered the leasing operations and was also applicable because it was in effect on the date that the damage occurred and actual injury was suffered. Finally, Dairy Farm argued that, regardless of which policy the court determined was applicable, there was coverage for the claims of the Kimpels against Dairy Farm for consequential damages.

On January 21, 1988, appellees Kimpels filed their motion for summary judgment on their counterclaim. In support of their motion for summary judgment they adopted and incorporated by reference the briefs submitted by Dairy Farm in support of its motion for summary judgment.

On February 8, 1988, appellant filed its motion for summary judgment and a memorandum in opposition to appellees' motions for summary judgment. Appellant distinguished the two policies that had been issued, stating that they differed in that the first policy did not contain products coverage for the leasing operations of livestock, while the second policy did contain such coverage. As to the first policy issued, appellant argued that the coverage provided was subject to a specific exclusion clause and did not provide coverage for the leasing operation of the cows as did the renewal policy. Specifically, appellant argued that the exclusion clause clearly and unambiguously excluded coverage for a lack of performance by the insured of any contract and excluded coverage for the failure of the

product to meet the level of performance, quality or fitness warranties. As to the second policy, the renewal policy, appellant argued that the cows were leased in June 1981 while the first policy was in effect and, although they did not receive verification until January 1983 that the cows had Johne's disease, it was alleged that they were diseased in 1981 or before and, therefore, the second policy did not provide coverage since the cause of action accrued at the time of injury or when the cows were delivered in 1981. In reply to appellant's memorandum in opposition to its motion for summary judgment, Dairy Farm argued that the declarations sheet on the first policy showed that coverage existed for its completed operations. Dairy Farm submitted also that the cause of action accrued when the damage occurred to the Kimpels and, therefore, the second policy did cover the claims.

On February 25, 1989, a hearing was held on the motions for summary judgment. The parties stipulated that issues for the court were of law and not of fact. On January 11, 1989, the trial court filed its decision finding that Dairy Farm had coverage for all of the Kimpels' claims under either the 1979 or the 1982 insurance policy. In its judgment entry filed on May 9, 1989, the trial court entered summary judgment in favor of Dairy Farm and the Kimpels on their counterclaims, declaring that the policy of insurance issued by appellant to Dairy Farm, effective August 1, 1979, to August 1, 1982, and the renewal policy of insurance issued by appellant, effective August 1, 1982 through August 1, 1985, both provided coverage, and ordering that appellant Continental Insurance Company had the duty to defend and provide coverage for the damages recovered in the Kimpels' action against Dairy Farm. The trial court also ordered that Dairy Farm not recover its attorney fees expended in the defense of the declaratory judgment action or any sums expended in the defense of the case brought against Dairy Farm by the Kimpels.

On January 5, 1989, appellant filed its notice of appeal and on June 8, 1989, Dairy Farm filed its notice of cross-appeal.

## I.

As to the 1979 to 1982 policy, appellant argues in support of its sole assignment of error that coverage thereunder was subject to a specific exclusion clause which excluded coverage for Dairy Farm for any of the claims asserted by the Kimpels. Specifically, appellant asserts that Exclusion M in the policy clearly and unambigu-

ously demonstrates that no coverage exists. Appellant argues further that the trial court, in holding that this exclusion did not apply, misconstrued the plain meaning of the language of the exclusion. Appellees respond that the specific exclusion relied on by appellant is, by its own terms, inapplicable.

In *Burris* v. *Grange Mut. Cos.* (1989), 46 Ohio St. 3d 84, 89, the Supreme Court of Ohio in discussing the interpretation of insurance policies, stated:

"The fundamental goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect. The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." (Citations omitted.)

The *Burris* court went on to state that the terms of an insurance policy must be given their plain and ordinary meaning and only where the policy is ambiguous and susceptible to more than one meaning must the policy be liberally construed in favor of those seeking coverage. *Id.* Therefore, where the language of an insurance policy is clear and unambiguous, it is unnecessary and impermissible for a court to resort to construction of that language. *Tomlinson* v. *Skolnik* (1989), 44 Ohio St. 3d 11, 12; see, also, *Karabin* v. *State Auto. Mut. Ins. Co.* (1989), 10 Ohio St. 3d 163, 167.

The general terms of coverage contained in the insurance policy issued by appellant effective August 1, 1979 to August 1, 1982, provides as follows:

"I. COVERAGE A--BODILY INJURY
LIABILITY
COVERAGE B--PROPERTY DAMAGE
LIABILITY

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"[t]o which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation

and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

"Exclusions

"This insurance does not apply:

"* * *

"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

"(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

"(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

"*but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;*" (Emphasis added.)

This policy also contained an endorsement for contractual liability insurance which provided for property damage liability. The endorsement provides in pertinent part:

"I. CONTRACTUAL LIABILITY COVERAGE

"(A) The definition of incidental contract is extended to include any contract or agreement relating to the conduct of the named insured's business."

When reviewing these provisions of the policy within the context of the entire policy and the law as set forth above, this court finds that Exclusion M, by the qualifications set forth in the last paragraph thereof, clearly does not operate to exclude coverage in the circumstances existing herein as appellant asserts. Further, when reviewing the policy provisions set forth above within the context of the entire policy, the only reasonable interpretation is that coverage is provided thereunder for the claims of the Kimpels for damages arising out of their lease agreement with Dairy Farm.

Based upon the foregoing, this court finds that there are no genuine issues of material fact and that reasonable minds could only conclude that appellees are entitled to judgment as a matter of law that this policy provides coverage for the claims brought by the Kimpels against Dairy Farm.

II.

As to the 1982 to 1985 policy, appellant argues in support of its sole assignment of error that it was error for the trial court to hold that Dairy Farm had coverage for the Kimpels' claims. Specifically, appellant asserts that the claims made against Dairy Farm emanate from the inception of the lease agreement or prior to that agreement and that the date upon which coverage for this action turns is the delivery date of the cows to the Kimpels as opposed to when injury or loss actually occurred.

Appellees argue that the renewal policy does provide coverage for the Kimpels' claims because that was the policy in effect in December 1982 and January 1983 when the Kimpels' loss actually occurred.

A review of both policies indicates that they contain essentially the same general provisions for coverage with some changes and variations in some of the endorsements to the second policy. One pertinent change is evident in the endorsement of the policy which sets forth the general liability hazards for which coverage is provided. In this endorsement, in the area of products coverage, there is an additional item listed under the description of hazards: "Leasing operations of livestock rated as products" (see Appendix 1). It is clear from this endorsement that coverage is provided for damages arising out of the leasing of livestock. Further, although there is not a separate provision in the policy that specifically states that coverage is provided for loss occurring during the time period that the policy is in effect, when considering the policy, in its entirety, in light of the principles set forth above concerning the interpretation of insurance contracts, it is clear that the only reasonable interpretation of the policy is that it provides coverage for those damages and losses that occur during the time period that the policy is in effect, irrespective of the date of the lease or the date of delivery of the cows. Nowhere in the policy do we find support for appellant's assertions otherwise. Here, the Kimpels' loss clearly occurred during the time period that this renewal policy was in effect.

Based on all of the foregoing, this court finds that there are no genuine issues of material fact and that reasonable minds could only conclude that appellees are entitled to judgment as a matter of law that this policy of insurance pro-

vides coverage for the claims brought by the Kimpels against Dairy Farm.

Accordingly, appellant's sole assignment of error is found not well-taken.

### III.

Appellee/cross-appellant Dairy Farm in its sole assignment of error asserts that the trial court erred in determining that it was not entitled to recover attorney fees expended for the defense of this action and in the defense of the action brought by the Kimpels. Dairy Farm asserts that the decision of the trial court is contrary to law, citing *Motorists Mut. Ins. Co.* v. *Trainor* (1973), 33 Ohio St. 2d 41, and argues that it is entitled to its fees for appellant's wrongful refusal to defend in these actions. Dairy Farm requests this court to reverse and remand the case to the trial court for a hearing to determine reasonable attorney fees and expenses incurred by it.

Although, as a general rule, attorney fees are not recoverable in a breach of contract action, the Supreme Court of Ohio, in *Motorists, supra,* noted that an exception to that rule has developed where as insurer wrongfully refuses to defend an action against its insured, citing *Socony-Vacuum Oil Co.* v. *Continental Casualty Co.* (1945), 144 Ohio St. 382. *Motorists, supra,* at 47. See, also, *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122; *Koenig* v. *Dayton* (1985), 28 Ohio App. 3d 70; *Kirtland* v. *Western World Ins. Co.* (1988), 43 Ohio App. 3d 167.

The rationale behind this exception is that the insured should be placed in the position he would have occupied if the insurer performed its duty, and the failure of the insurer in meeting its duty to defend should not require the insured to incur expenses which could not be recovered. *Motorists, supra; Koenig, supra; Allen, supra.*

The pertinent part of the renewal policy provides:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

"[t]o which this insurance applies, caused by an occurrence, and *the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent,* and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligat-

ed to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." (Emphasis added.)

The trial court determined that appellant had a duty to defend Dairy Farm in the suit filed by the Kimpels and we have affirmed. Appellant's failure to perform its duty to defend Dairy Farm as provided by the policy should not require Dairy Farm to incur the expense of defending both the suit filed by the Kimpels and the declaratory judgment action filed by appellant. Therefore, pursuant to the foregoing, this court finds that appellee Dairy Farm is entitled to its reasonable attorney fees incurred in defending both actions.

Accordingly, appellee/cross-appellant Dairy Farm's sole assignment of error is found well-taken.

Upon consideration whereof, this court finds that the portion of judgment of the William County Court of Common Pleas which granted summary judgment in favor of appellees is affirmed. This court finds further that the motion of the judgment of the Williams County Court of Common Pleas which denied appellee Dairy Farm's request for attorney fees is reversed and this cause is remanded to the trial court for a hearing to determine the amount of Dairy Farm's reasonable attorney fees and expenses. Court costs assessed to appellant.

*Judgment affirmed in part,*
*reversed in part.*

HANDWORK, P.J., GLASSER, J., and ABOOD, J., concur.