BROWN, Appellant,

v.

DENNY et al., Appellees.

[Cite as *Brown v. Denny* (1991), 72 Ohio App.3d 417.]

Court of Appeals of Ohio,
Montgomery County.

No. 12033.

Decided Feb. 8, 1991.

418

[black redaction bars]

*Elaine M. Stoermer,* for appellant.
*Michael L. Tucker,* for appellees.

FAIN, Presiding Judge.

This is an appeal from a directed verdict in favor of defendants-appellees, Donald C. Denny and Sheila Denny. Plaintiff-appellant, Keith Brown ("Brown"), contends that the trial court erred in directing a verdict.

Brown sought to recover damages for interference with his court-ordered visitation with his children, Jesse Keith Brown and Rachel Elizabeth Brown. The Dennys are the children's maternal grandparents. Brown predicated his claim upon three theories of recovery. We conclude that the trial court properly directed a verdict in favor of the Dennys upon Brown's common-law tortious interference with visitation theory. However, we agree with Brown that he properly pled a cause of action under R.C. 2307.50, and that there is evidence in the record from which a reasonable mind might conclude that he was entitled to recover pursuant to the statute. We also agree with Brown that reasonable minds might reach different conclusions on his intentional infliction of emotional distress claim. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for a new trial.

I

Donna Denny Brown was granted a divorce from plaintiff-appellant Brown in 1985. Pursuant to the decree, Mrs. Brown was awarded custody of their two children, and Brown was granted "reasonable visitation which shall take place only in the presence and under the supervision of * * * [the mother] at her residence."

In 1989, Brown brought this action against the Dennys, seeking damages for tortious interference with his visitation rights. The case was tried before

a jury in December 1989. The trial court sustained the Dennys' motion for a directed verdict, made at the close of the plaintiff's evidence.

Brown appeals from the directed verdict in favor of the Dennys.

## II

Brown's third assignment of error is as follows:

"The trial court erred in directing a verdict against appellant's cause of action under Ohio Rev.Code Section 2307.50."

■ When the evidence is viewed in a light most favorable to Brown, the following material facts must be deemed to have been established for the purposes of reviewing the directed verdict.

Mr. and Mrs. Brown were originally from the Dayton area. They resided in Las Vegas, Nevada, after their marriage in June 1982. Their oldest child, Jesse, was born there in March 1983.

After marital problems developed, Mrs. Brown returned to the Dayton area with her son in September 1984, where she resided with her parents. The second child, Rachel, was born in May 1985. Brown continued to reside in Las Vegas, where he was still residing at the time of the trial herein.

Brown's motion for increased visitation was heard in August 1987. The report and recommendation of the referee indicated that Brown had not seen his children since August 1986, and that he had been allowed to talk with them by telephone only once or twice since then.

The referee found that Brown had notified Mrs. Brown by telephone that he would be in Dayton from August 8, 1987 until August 15, 1987, but was advised by Mrs. Brown that he would not be allowed to see his children on either August 8 or August 9. The referee recommended that Brown be granted daily visitation August 10, 1987 until August 14, 1987, inclusive, from 3:00 p.m. to 8:00 p.m. at Mrs. Brown's home. The referee further recommended that Brown be permitted to take the children to dinner each evening between 5:00 p.m. and 7:00 p.m. An interim order of the court adopting the referee's recommendation was filed the day of the hearing.

Mrs. Brown was aware of the visitation order at the conclusion of the hearing. Donald Denny had accompanied his daughter to the hearing, but, by Brown's admission, was outside the hearing room at the time that the visitation order was announced. Immediately following the hearing, the Dennys took their daughter and two grandchildren to their home in Tennessee. Mrs. Denny admitted that, at a deposition, she was asked the following question and gave the following answer:

"Q. Did she [Mrs. Brown] say anything to you about the visitation Mr. Brown had?

"A. I'm sure she did. I don't recall the exact words."

When the evidence is viewed in a light most favorable to Brown, and all reasonable inferences are drawn in his favor, we conclude that there is evidence in the record from which a reasonable mind might find that the Dennys knew that the divorce court had ordered that Brown have visitation with their grandchildren when they took the grandchildren and their daughter with them to their home in Tennessee. Thus, a reasonable mind might find, from the evidence, that the Dennys assisted Mrs. Brown in interfering with Brown's visitation rights by participating in the removal of the two children from the Dayton area.

Brown predicates recovery upon R.C. 2307.50, civil action for interference with possessory interest in minor, which provides, in pertinent part, as follows:

"(A) As used in this section:

"(1) 'Child stealing crime' means a violation of sections 2905.01, 2905.02, 2905.03, 2905.04, and 2919.23 of the Revised Code.

"(2) 'Minor' means a person under eighteen years of age.

"(3) 'Possessory interest' means that a person has a right of custody or access to a minor as his parent, custodial parent, noncustodial parent, guardian, or other custodian.

"(B) Except as provided in division (D) of this section, if a minor is the victim of a child stealing crime and, as a result of that crime, his parents, custodial parent, noncustodial parent, guardian, or other custodian is deprived of a possessory interest in the minor, the parents, custodial parent, noncustodial parent, guardian or other custodian may maintain a civil action against the offender to recover damages for interference with the possessory interest.

" * * *

"(D) This section does not create a civil action for one parent against the other parent who commits a child stealing crime against his own child."

R.C. 2919.23, interference with custody, provides, in pertinent part, as follows:

"(A) No person, knowing he is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor any of the following persons from his parent, guardian, or custodian:

"(1) A child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one[.]"

The issue is whether Brown's children were "the victim(s) of a child stealing crime." If so, then he, a noncustodial parent, was deprived of his possessory interest, and is entitled to recover damages pursuant to R.C. 2307.50(B).

■ In our view, if the evidence is viewed in a light most favorable to Brown, a reasonable mind could find that the Dennys, either without privilege to do so or being reckless in that regard, took, kept, or harbored, the children from Brown, their parent, in violation of R.C. 2919.23(A). To argue, as the Dennys do, that to take, to keep, or to harbor a child from his noncustodial parent is not within the scope of R.C. 2919.23(A) would be to read out of R.C. 2307.50 the provisions for recovering damages for interference with a noncustodial parent's possessory interest in his children, even though those provisions are expressly contained therein. We reject an interpretation of R.C. 2919.23 that would conflict with the clear expression of legislative intent, in the text of R.C. 2307.50, to provide a civil remedy for noncustodial parents who have their rights of visitation interfered with by third persons.

*Waliser v. Tada* (Mar. 6, 1990), Franklin App. No. 89AP–590, unreported, 1990 WL 20080, is distinguishable. In that case, an organization known as Choices for Victims of Domestic Violence had aided and abetted a mother in secreting a minor child from the father, who was the mother's husband. There was no court order granting either parent custody or visitation. The Franklin County Court of Appeals held that "Choices could not, as a matter of law, have committed the child-stealing crime alleged in the complaint, R.C. 2929.23, Interference with custody." We agree with that holding, but it follows from the fact that Choices for Victims of Domestic Violence was alleged to have aided and abetted one parent as against the other, and neither parent had a possessory interest in the child that was superior to the other parent's possessory interest at that point in time. In the case before us, however, Brown was vested with a possessory interest in his children by virtue of the court's visitation order, and there was evidence from which the jury could find that the Dennys interfered with that possessory interest.

■ The Dennys argue that there can be no liability for assisting a custodial parent in withholding children from the noncustodial parent in violation of court-ordered visitation by virtue of R.C. 2307.50(D), which provides that: "This section does not create a civil action for one parent against the other parent who commits a child stealing crime against his own child."

We agree with Brown, however, that R.C. 2307.50(D) is evidently in recognition of the fact that as between parents a domestic relations court is in a position to deal with violations of its visitation orders through the exercise of its contempt powers. This would ordinarily be preferable to involving another court in the matter, and it is understandable, therefore, that the General

Assembly wished to make it clear that there would be no independent civil action, cognizable in another court, in such a situation. However, as Brown notes, the domestic relations court is not in a position to use its contempt powers against third persons, such as the Dennys, who interfere with court-ordered visitation. We agree with Brown that the exception provided for in R.C. 2307.50(D) is not intended to extend to civil actions against third persons.

Brown's third assignment of error is sustained.

## III

Brown's first assignment of error is as follows:

"The trial court erred in granting appellees' motion for directed verdict dismissing appellant's cause of action for tort liability for interference with visitation."

Essentially, Brown asks that we recognize a common-law cause of action for interference with visitation rights. Brown relies upon *Clark v. Bayer* (1877), 32 Ohio St. 299, in support of this proposition. That case involved interference with custody, not interference with visitation.

For the reasons indicated in Part II, above, we conclude that the General Assembly has provided for a cause of action for interference with visitation rights in R.C. 2307.50. The provisions in that section, including the exception provided therein, and the cross-reference to R.C. 2919.23, persuade us that the General Assembly intended for the cause of action provided for in R.C. 2307.50 to be the exclusive civil remedy for interference with visitation rights. This conclusion is bolstered by the fact that R.C. 2307.50 does not provide that the remedy provided therein is in addition to any other remedies at common law.

Brown's first assignment of error is overruled.

## IV

Brown's second assignment of error is as follows:

"The trial court erred in dismissing appellant's claim for infliction of mental distress."

In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, the Supreme Court approved the definition of "extreme and outrageous conduct" contained in 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d*, which states, in pertinent part, as follows:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional

distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt." See, also, *Koenig v. Dayton* (1985), 28 Ohio App.3d 70, 28 OBR 111, 502 N.E.2d 233.

Clearly, not every wrongful act is outrageous. Only the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct.

In the case before us, the evidence would support a finding that the Dennys decided to support their daughter in her decision to violate a visitation order issued by a domestic relations court, and thereby to frustrate Brown's desire to enjoy his visitation with his children. That this was wrong cannot be denied. Although the issue is close, we are not prepared to say that reasonable minds can only come to the conclusion that the Dennys' conduct was not outrageous. In our view, reasonable minds could come to differing conclusions on this issue. Consequently, the trial court erred when it removed the issue from the province of the jury.

Brown's second assignment of error is sustained.

### V

Brown's second and third assignments of error having been sustained, the judgment of the trial court will be reversed, and this cause will be remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

BROGAN, J., concurs.

WILSON, J., concurs in judgment.

WILSON, Judge, concurring in judgment.

I agree with the majority in its disposition of the first and second assignment of error for the reasons stated. In my view, a claim for tortious interference with the visitation rights of a noncustodial parent should also be denied based upon "public policy and fear that it would encourage a multitude of claims for petty infractions." Kark, Domestic Torts: Family Violence, Conflict and Sexual Abuse (1989) 221, Section 5.17.

The Dennys aided, abetted, and subsidized their daughter in denying the plaintiff a "possessory interest" in his children. However, this activity is not the basis of a civil action under R.C. 2307.50 unless the minor is a victim of a "child stealing crime." In my view, a person who aids a custodial parent in depriving a noncustodial parent of a possessory interest in his children has not committed a child stealing crime.

I would overrule the third assignment of error.