DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, The Sylvania Township Board of Trustees; Donald J. Finnegan, Jr.; Dock D. Treece; George D. Fanning, Jr.; and James C. Maxwell ("Township Trustees"), appeal the decision of the Lucas County Court of Common Pleas finding that coverage did not exist under the insurance policy issued by appellee, Twin City Fire Insurance Company ("Twin City"). Because we must construe the broad definition of "damages" as set forth in the policy in the insured's favor, an award of attorney fees is covered under the policy. We, therefore, reverse.
 {¶ 2} The issue in this case is whether a particular insurance policy covers attorney fees awarded against the Township Trustees. Two separate lawsuits are pertinent to our discussion. Twin City issued a policy entitled "Public Officials Errors or Omissions Liability Insurance Policy" to Sylvania Township with effective dates from December 1, 1997 to December 1, 1998. In a lawsuit filed by Sherry J. Specht and other township residents within the policy's term, Specht v.Finnegan, Lucas County Case No. CI98-2134, it was alleged that the Township Trustees had engaged in multiple violations of Ohio's Public Records Act, R.C. 149.43, and Ohio's Open Meeting Law ("Sunshine Act"), R.C. 121.22, and had wasted and mishandled township funds. The residents' complaint sought injunctive relief, a writ of mandamus, damages, costs, and reasonable attorney fees. The Township Trustees notified Twin City of the pending action, but Twin City denied coverage after concluding that none of the underlying claims sought "damages" as defined within the policy. As a result, the Township Trustees filed their own declaratory judgment action and breach of contract claim against their insurer, Twin City, and cross-motions for summary judgment were filed in that case. While the motions were pending, the Specht court issued its opinion on December 27, 2000, finding that the Township Trustees committed three violations of the Public Records Act and five violations of the Sunshine Act. Later, in its opinion and judgment entry filed December 18, 2001, the Township Trustees were ordered to pay reasonable attorney fees in the amount of $16,500 in the Specht suit.[1]
 {¶ 3} On February 12, 2003, the trial court, in the declaratory judgment action, granted Twin City's motion for summary judgment and denied the Township Trustees'. It is from that judgment that the Township Trustees now appeal and present the following sole assignment of error:
 {¶ 4} "The trial court erred in granting defendant Twin City Fire Insurance Company's Motion for Summary Judgment and in denying Sylvania Township's Motion for Summary Judgment."
A. Summary Judgment Standard
 {¶ 5} A review of the trial court's granting of summary judgment is de novo, and thus, we apply the same standard as the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v.Burt (1996), 75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111.
B. Law on the Interpretation of an Insurance Policy
 {¶ 6} An insurance policy is a contract, and its construction is interpreted as a matter of law. Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241. In determining the meaning of the insurance contract, we look at the policy language, giving terms their plain and ordinary meaning, to ascertain a reasonable understanding of the contract. Gomolka v. State Auto. Mutl. Ins.Co. (1982), 70 Ohio St.2d 166, 167-168. If the provisions of the contract may have more than one interpretation, the provisions "will be construed strictly against the insurer and liberally in favor of the insured." Beaver Excavating Co. v. United StatesFid. Guar. Co. (1998), 126 Ohio App.3d 9, 14, citing, King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208. Furthermore, under Ohio law, "an exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." Westfield Companies v. O.K.L. Can Line, 1st
Dist. No. C-030151, C-030197, C-030298, 2003-Ohio-7151 at ¶ 26 citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.
(1992), 64 Ohio St.3d 657, 665.
C. Terms of the Twin City Policy
 {¶ 7} In this appeal, we are asked to determine whether the errors or omissions policy before us provided coverage for a lawsuit seeking monetary relief in the form of attorney fees and costs.[2]
 {¶ 8} The insuring agreement provides as follows: "We will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of errors or omissions injury to which this policy applies." The policy further refines coverage by stating "The errors or omission injury must be caused by an occurrence. The occurrence must take place in the coverage territory." In addition, the policy provides that Twin City has "the right and duty to defend any claim or suit seeking such damages;" however, the duty to defend is conditional under the limits of liability and the right to investigate and settle a claim or suit. Finally, the policy states that "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under this policy."
 {¶ 9} "Error or omissions injury" is defined in the policy to mean "injury or damage that arises out of an insured's rendering of or failure to render service within the scope of your facilities or operations including but not limited to: a. Discrimination, not committed by or at the insured's direction, when insurance therefore is permitted by law; b. False or improper service of process; and c. Violation of civil rights." The parties do not dispute that the earlier Specht lawsuit alleged error or omissions injuries that occurred in the coverage territory. Rather, the dispute is whether the residents' suit contained a claim for damages. The policy defines "damages" as "monetary judgment, award or settlement but does not include fines or penalties or damages for which insurance is prohibited by law applicable to the construction of this policy." The terms "monetary judgment," "award," "settlement," "fines," and "penalty" are not defined further.
D. Position of the Parties
 {¶ 10} The Township Trustees argue that Twin City had a duty to defend and indemnify them in the Specht lawsuit because a claim for, and an award of, attorney fees constituted "damages" under the terms of the policy. The Township Trustees maintain that the trial court should have broadly interpreted the policy in its favor because the terms "monetary judgment" and "award" in the definition of "damages" are not further defined in the policy, and while the definition of "damages" specifically excludes fines and penalties, it does not specifically exclude attorney fees or costs. The Township Trustees also contend that attorney fees and costs constitute a "monetary judgment" or "award" that is not a "fine" or "penalty," and therefore are "damages" under the policy.
 {¶ 11} Twin City denies that there was coverage under the policy or a duty to defend the Specht suit because (1) the attorney fee award was "punitive" in nature and thus is excluded by the definition of "damages;"[3] (2) pursuant to Vlachv. Kent State Univ. (1990), 70 Ohio App.3d 407, the award of attorney fees, although monetary, does not qualify as "monetary damages;" (3) there was no absolute duty to defend as there was no coverage; and (4) the award would be subject to a $10,000 deductible per occurrence, and there were eight violations.
E. Duty to Defend
 {¶ 12} An insurer's duty to defend is separate and distinct from its duty to indemnify, and the duty to defend is broader than the duty to indemnify. Socony-Vacuum Oil Co. v. ContinentalCas. Co. (1945), 144 Ohio St. 382, 59 N.E.2d 199, paragraph one of the syllabus. In Cincinnati Ins. Co. v. Anders,99 Ohio St.3d 156, 2003-Ohio-3048, the Supreme Court of Ohio reviewed the law on the duty to defend: "In Motorists Mut. Ins. Co. v.Trainor (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, this court held that under a liability insurance policy the scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. We held that `where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured.' Id. at paragraph two of the syllabus."Anders, 99 Ohio St.3d at ¶ 17. The Anders court then noted that the holding in Motorists was expanded by Willoughby Hillsv. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, which held that "where the allegations state a claim that falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the actions." Anders,
99 Ohio St.3d at ¶ 18 citing Willoughby Hills,9 Ohio St.3d at 180.
 {¶ 13} Willoughby Hills, however, was distinguished inPreferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118. Anders, 99 Ohio St.3d at ¶ 20. InPreferred Risk, the Ohio Supreme Court stated "* * * where the conduct which prompted the underlying * * * suit is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend and indemnify its insured simply because the underlying complaint alleges conduct within coverage." Preferred Risk, 30 Ohio St.3d at 113.
 {¶ 14} While Twin City argues it does not have an absolute duty to defend based on Preferred Risk, we cannot find thatPreferred Risk applies because in this case the statutory violations alleged in the Specht complaint and the corresponding claim for attorney fees are not so indisputably outside the terms of the policy.
F. Trial Court's Ruling
 {¶ 15} The trial court identified the issue before it as "whether the underlying lawsuit involved claims against plaintiffs which could result in a `monetary judgment, award or settlement' that does not consist of `fines or penalties.'" It then determined that the Specht complaint sought only statutory relief pursuant to R.C. 121.22 and 149.43. Relying on this conclusion, it went on to state: "The Ohio Supreme Court has held that costs, attorney fees, and civil forfeitures granted pursuant to R.C. 121.22 do not constitute `monetary damages.' Vlach [v.Kent State Univ. (1990), 70 Ohio App.3d 407].[4] Based on the foregoing, this Court finds that the allegations in theSpecht suit did not constitute `monetary damages' as defined in the Twin City policy. Therefore, Twin City did not have a duty to defend and indemnify plaintiffs with respect to the underlying lawsuit."
 {¶ 16} The trial court's reliance on the Vlach decision is misplaced. The issue in Vlach was whether jurisdiction was proper in either the Portage County Court of Common Pleas or the Court of Claims because the plaintiffs sought to recover their attorney fees and costs and a civil forfeiture of $100 for a violation of R.C. 121.22. Here, the trial court employed Vlach
to exclude attorney fees and costs broadly from the term "monetary damages." More importantly, it ignored the contract language of the policy that must govern this case. In Vlach,
the Eleventh District merely distinguished the statutorily entitled relief sought by the plaintiffs from a suit seeking compensatory damages based on a private cause of action. It then held that the court of common pleas had jurisdiction to award all court costs and reasonable attorney fees pursuant to R.C. 121.22. Id. at 410. The issue here does not involve the common law concept of "damages" to determine competing jurisdiction between the court of common pleas and the court of claims, but whether attorney fees and costs are encompassed in the definition of "damages" as set forth in a written insurance policy.
 {¶ 17} "G. Indemnification
 {¶ 18} Arguing that the terms "monetary judgment" and "award" include an award of attorney fees, the Township Trustees rely onKirkland v. Western World Ins. Co. (1988), 43 Ohio App.3d 167. In that case, the city of Kirkland brought an action against its insurer, Western World Insurance Company, for indemnification for the payment of attorney fees it was ordered to pay as the result of an equitable action filed against the city. Under the terms of the policy, Western World Insurance Company was obligated to pay "all loss which the Public Entity becomes legally obligated to pay as damages" and had the right and duty to defend "any suit against the Insured seeking damages on account of such Wrongful Act." Id. at 168. The policy also excluded any liability on the part of Western World Insurance Company if the loss arose out of "claims, demands or actions seeking relief, or redress, in any form other than money damages." Id. at 169. The city of Kirkland argued that attorney fees were a form of "money damages" because attorney fees are a cost and costs are also a form of "money damages." The appellate court stated "Since the term `money damages' was not defined in the policy, for purposes of this discussion and under these circumstances, this court holds that attorney fees awarded appellee were money damages." Id. at 170.
 {¶ 19} Twin City argues that Kirkland is inapplicable because its policy does define "damages," while the Western World policy did not. Turning to the Twin City policy, we see that "damages" is contractually defined. "Damages" means "monetary judgment, award or settlement but does not include fines or penalties or damages for which insurance is prohibited by law applicable to the construction of this policy." However likeKirkland, Twin City's policy does not uniquely define key terms — "monetary judgment" or "award." Therefore, we look to the common meaning of those terms. See Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108 (Undefined terms in an insurance policy must be given their plain and ordinary meaning.)
 {¶ 20} "Judgment" is "a court's final determination of the rights and obligations of the parties in a case." Black's Law Dictionary (7 Ed. 1999) 846. The Specht court awarded a judgment for attorney fees in the amount of $16,500 against the Township Trustees. Therefore, attorney fees constitute a "monetary judgment" or "award." However, if they also can be classified as a "fine" or "penalty," then they are excluded from coverage under the policy. So unless one of the narrow exclusions in the definition of "damages" applies, Twin City had an obligation to defend and indemnify the Township Trustees in theSpecht lawsuit.
 {¶ 21} The Twin City policy also does not define the terms "fine" or "penalty" and so the common meaning of those terms should apply. Twin City contends that the Specht court specifically found that the attorney fee award rendered against the Township Trustees was "punitive" in nature and that by definition punitive damages constitute "fines or penalties" as a matter of law.
 {¶ 22} A careful review of the Specht court's decision, however, shows that the trial court did not actually find that the award of $16,500 was punitive in nature. Rather, the court noted that the award of attorney fees was discretionary and set forth what must be considered before any award of attorney fees was granted to the residents. It explained: "Further, in a [Public Records Act] action, a sufficient benefit to the public must be shown in order to warrant an award of attorney fees.Fox [v. Cuyahoga Cty. Hosp. System (1988), 39 Ohio St.3d 108] at 112. Because the punitive nature of such an award, it is permissible to consider the reasonableness of a parties refusal to comply with the [Public Records Act.] Id." The Specht court did state that the Township lacked a legal basis supporting the failure to produce. The trial court's findings, however, concentrated on establishing a public benefit and did not indicate an intention to punish the Township Trustees.
 {¶ 23} Furthermore, in State ex rel. Beacon JournalPublishing Company v. Ohio Dept. of Health (1990),51 Ohio St.3d 1, one of the questions asked was whether R.C. 149.43(C)'s award of attorney fees violated the prohibition against retroactive application in Section 28, Article II of the Ohio Constitution. The Ohio Supreme Court specifically declined to find that the imposition of attorney fees equated to an award of punitive damages. Instead, the Ohio Supreme Court held that "Attorney fees are costs, statutes relating to costs are remedial, * * *." Id. at 3.
 {¶ 24} In this case, attorney fees were awarded pursuant to R.C. 149.43(C) and 121.22. Because this award was handled pursuant to statute, the attorney fee award is regarded as a part of costs. Therefore, the award of attorney fees did not constitute a "fine" or a "penalty," and as a result, none of the exceptions to the broad definition of "damages" applied. We, therefore, find that the Twin City policy provided coverage for the Specht lawsuit and that Twin City had a duty to defend Sylvania Township.[5] Sylvania Township's sole assignment of error is well-taken.
 {¶ 25} Based on the above, we find that substantial justice was not done the parties complaining. The judgment of the Lucas County Court of Common Pleas is reversed, and the case is remanded to the trial court for further proceedings consistent with this decision and the law. Costs assessed to appellee.
Judgment Reversed.
Handwork, Lanzinger and Singer, JJ., concur.
[1] These decisions in the Specht case were affirmed inSpecht v. Finnegan, 149 Ohio App.3d 201, 2002-Ohio-4660.
[2] The Specht complaint also sought civil forfeiture of $500 for violation of R.C. 121.22. The Township Trustees do not dispute that the claim for civil forfeiture is not covered under the policy.
[3] The Township Trustees contend that Twin City did not raise its argument characterizing attorney fees as punitive in nature before the trial court on summary judgment. In its combined reply brief and brief in opposition to the Township Trustees' motion for summary, however, Twin City does make a broad statement that "any monetary relief afforded pursuant to Ohio Rev. Code §§121.22 and/or 149.43 constitutes a `fine' or `penalty,' or otherwise falls outside the scope of the term `damages.'" Therefore, we will consider this argument.
[4] The trial court mistakenly stated in its judgment entry that Vlach was decided by the Ohio Supreme Court when it actually was from the Eleventh Appellate District. We assume that this is simply a typographical error.
[5] Twin City also contends that, even if coverage is found, the award is subject to the policy's deductible of $10,000 per occurrence. This issue was argued in Twin City's reply brief before the trial court. The trial court, however, did not determine this issue. Upon remand, the trial court should address this argument in determining damages.