OPINION
{¶ 1} Plaintiffs-appellants, Cardiothoracic Vascular Surgical Specialists, Inc., and Cardiothoracic Vascular Surgical Associates, Inc. (collectively, "appellants") appeal the judgment of the Franklin County Court of Common Pleas, in which that court denied appellants' motion for partial summary judgment and granted judgment as a matter of law in favor of defendant-appellee, Travelers Indemnity Company ("appellee"), finding that appellee has no duty to defend appellants under a commercial general liability insurance policy ("the policy") in a lawsuit entitled McDonnell v. Cardiothoracic Vascular SurgicalAssociates, Inc., et al. ("the McDonnell litigation").
 {¶ 2} The policy's effective period is specified in its declarations as October 1, 2001 to October 1, 2004. The policy provides, in pertinent part:
 COVERAGE B. PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY
 1. Insuring Agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury," "advertising injury" or "web site injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury," "advertising injury" or "web site injury" to which this insurance does not apply. * * *
 * * *
 b. This insurance applies to:
 (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you[.]
 {¶ 3} The policy also provides:
 13. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
 * * *
 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; * * *
 {¶ 4} In addition, the policy contains an employment-related practices exclusion, which provides, in pertinent part:
 B. The following exclusion is added to paragraph 2, Exclusions of COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY (Section I—Coverages):
 This insurance does not apply to:
 (1) "Personal injury" to:
 a. A person arising out of any:
 (1) Refusal to employ that person;
 (2) Termination of that person's employment: or
 (3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person; * * *
 {¶ 5} On January 27, 2003, Bryan E. McDonnell ("McDonnell") filed suit in the United States District Court for the Southern District of Ohio, Eastern Division, against appellant Cardiothoracic Vascular Surgical Associates, Inc. ("CVSA"). In his complaint McDonnell alleged that on September 19, 2000, he signed an employment agreement with CVSA. He alleged that CVSA gave him certain assurances and made certain promises prior to his signing the employment agreement, and that he accepted the offer of employment and relocated to central Ohio in reliance upon those assurances and promises.
 {¶ 6} McDonnell alleged that CVSA and its owners later breached these promises and surreptitiously involved him in an illegal scheme with another health care entity (Genesis) to violate various federal statutes, including the Anti-Kickback statute and certain Medicare statutes. McDonnell alleged that in February 2001, four months after he had relocated to Zanesville and begun work for CVSA, McDonnell was advised of the scheme and asked to execute certain documents designed to cover it up. When he refused, he alleged, CVSA attempted to coerce and intimidate him into doing so. When he failed to relent CVSA allegedly harassed him to the extent that its actions constituted a constructive discharge.
 {¶ 7} McDonnell's complaint contains claims against CVSA for fraud, wrongful discharge in violation of public policy, and breach of contract. Within Count II, entitled "Wrongful Discharge by CVSA in Violation of Public Policy", McDonnell alleges, "[a]s a direct and proximate result of CVSA's misconduct, McDonnell has suffered damages in excess of $1,000,000 for which he is entitled to recover, including lost wages and benefits, lost profits, relocation expenses, injury toreputation and emotional distress." (McDonnell Complaint, p. 14, ¶ 49.) (Emphasis added.)
 {¶ 8} Along with compensatory damages for the fraud and breach of contract claims, McDonnell included within his prayer for relief a request for damages for wrongful discharge in violation of public policy, "including back pay, lost benefits, front pay in lieu of reinstatement, lost profits, relocation expenses and compensation forinjury to his reputation and emotional distress[.]" (Id., p. 21.) (Emphasis added.) McDonnell later filed an amended complaint containing the same allegations and prayer for relief, but adding as a defendant appellant Cardiothoracic Vascular Surgical Specialists, Inc., which is CVSA's successor corporation.
 {¶ 9} Following appellee's refusal to provide coverage for appellants' defense of the McDonnell litigation, appellants instituted the within action, seeking a declaration that appellee is obligated to provide a defense and/or to indemnify appellants with respect to the claims asserted against them in the McDonnell litigation. Appellants also claimed that appellee breached its duty of good faith in denying coverage.
 {¶ 10} Appellee filed a motion for summary judgment as to all claims, and appellants filed a cross-motion for partial summary judgment, seeking judgment as a matter of law on their declaratory judgment claim. The trial court denied appellants' motion and sustained appellee's motion, finding that the policy does not entitle appellants to coverage for their defense of the McDonnell litigation. Appellants timely appealed and present the following four assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR
 The trial court erred in granting Appellee the Travelers Indemnity Company * * * its motion for summary judgment because the trial court disregarded the Ohio Supreme Court's precedents established in Willoughby Hills v. Cincinnati Insurance Company and its progeny.
 SECOND ASSIGNMENT OF ERROR
 The trial court erred in granting Appellee's motion for summary judgment in reaching its conclusion that Appellee is not required to cover the cost of the underlying case based on the flawed application of the employment-related practices exclusion contained within the policies.
 THIRD ASSIGNMENT OF ERROR
 The trial court erred in asserting that Appellee was not obligated to provide coverage Appellant for the cost of defense or for funding of defense of the McDonnell suit.
 FOURTH ASSIGNMENT OF ERROR
 The trial court erred by failure to apply the "pleadings test" and sustain Appellants' motion for partial summary judgment since Appellee is obligated to fund a defense or defend Appellants in the McDonnell suit because Appellants have arguable coverage for their alleged "disparagement" of a "person's services."
 {¶ 11} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ. R. 56(C); State ex rel. Grady v. State Emp. Rels.Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. We review questions of law de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing Ohio Bell Tel.Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.
 {¶ 12} In granting summary judgment in favor of appellee, the trial court concluded that the McDonnell litigation fell outside the scope of the initial grant of coverage under the policy, and was also specifically excluded by the policy's employment-related practices exclusion.
 {¶ 13} Appellants' first, third and fourth assignments of error will be addressed together because they all present the same related issues, to wit: whether the trial court erred in failing to conclude that the litigation falls "potentially or arguably within the policy coverage" and whether the trial court erred in concluding that the McDonnell litigation indisputably falls outside of the scope of the initial grant of coverage.
 {¶ 14} In concluding that the initial grant of coverage does not give rise to a duty to defend appellants in the McDonnell litigation, the trial court rejected appellants' argument that McDonnell's allegations of fraud, breach of contract and wrongful discharge involve "personal injury", as defined at section 13(d) of the policy, which includes slander, libel or disparagement of a person's services. The court reasoned that the McDonnell litigation did not involve disparagement, libel or slander of the doctor's services because the allegations involve only interactions between appellants and McDonnell and do not involve any communication or publication to a third party, which is an essential element of any libel, slander or disparagement-of-services claim.
 {¶ 15} Appellants attack the trial court's analysis of the allegations in McDonnell's complaint and its application of duty-to-defend precedent. Appellants point out that McDonnell alleges that CVSA's wrongful discharge and fraud caused him to suffer "injury to his reputation." They also direct our attention to paragraphs 33-35 of the McDonnell complaint, which assert:
 33. But for CVSA's false and fraudulent representations and omissions, Dr. McDonnell would not have resigned his Army commission, quit his job, given up his practice, purchased a residence and relocated his family to Zanesville.
 34. The foregoing fraudulent representations and omissions by CVSA were intentional and malicious and made in reckless disregard of the rights of Dr. McDonnell.
 35. As a direct result of CVSA's false and fraudulent representations and omissions, Dr. McDonnell has incurred substantial costs and expenses in excess of$600,000 and sustained other damages.
 {¶ 16} Appellants maintain that these allegations allege "personal injury" to McDonnell, as that term is defined at section 13(d) of the policy, because they "arguably plead that appellants have conducted themselves such as to disparage McDonnell's performance of services as a physician." (Brief of Appellants, 4.)
 {¶ 17} Appellants argue that the trial court misapplied the case ofWilloughby Hills v. Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177, 180,9 OBR 463, 459 N.E.2d 555, in which the Supreme Court of Ohio held:
 Where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim.
 {¶ 18} Appellants contend that the allegation that CVSA's actions damaged McDonnell's reputation brings the McDonnell litigation "potentially or arguably within the policy coverage" under section 13(d), which forms part of the policy's definition of "personal injury." (See ¶ 3, ante.)
 {¶ 19} Additionally, they maintain, the McDonnell litigation is notindisputably outside the scope of coverage because McDonnell's complaint alleges that appellants sent him certain agreements for the purpose of legitimizing what McDonnell claims was the illegal scheme in which he refused to participate. Appellants argue that, "it is not clear whether the information of the agreement and/or statement were disclosed to the other third parties, i.e., any entities involved with Genesis, regarding McDonnell. Therefore, the lack of clarity arguably brings the claim within the scope of coverage under the [policy]." (Brief of appellants, 14.) Appellants maintain that the mere allegation that CVSA caused damage to McDonnell's professional reputation is enough to trigger the duty to defend or advance the costs of the defense against the McDonnell litigation.
 {¶ 20} An insurer's duty to defend is broader than and distinct from its duty to indemnify. Socony-Vacuum Oil Co. v. Continental Cas.Co. (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus; W. Lyman Case Co. v. Natl. City Corp. (1996),76 Ohio St.3d 345, 347, 667 N.E.2d 978. An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy.Sanderson v. Ohio Edison Co. (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, at paragraph one of the syllabus. Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the policy coverage. Preferred Mut. Ins. Co. v. Thompson (1986), 23 Ohio St.3d 78,80, 23 OBR 208, 491 N.E.2d 688.
 {¶ 21} On the other hand, an insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. Preferred RiskIns. Co. v. Gill (1987), 30 Ohio St.3d 108, 113, 30 OBR 424,507 N.E.2d 1118. The duty to defend an action is not determined by the action's ultimate outcome or the insurer's ultimate liability. Motorists Mut.Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41, 62 O.O.2d 402,294 N.E.2d 874, at paragraph two of the syllabus. There is no duty to defend "if there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage." Cincinnati Indemn.Co. v. Martin (1999), 85 Ohio St.3d 604, 605, 710 N.E.2d 677.
 {¶ 22} In examining the underlying complaint we will not "stretch the allegations beyond reason to impose a duty on the insurer. To do so would effectively impose an absolute duty upon the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint." Motorists Mut. Ins. Co. v. Natl. Dairy Herd ImprovementAssn., Inc. (2001), 141 Ohio App.3d 269, 279, 750 N.E.2d 1169, quotingLeland Electrosystems, Inc. v. The Travelers Ins. Co. (July 10, 1984), 2nd Dist. No. 8580.
 {¶ 23} In Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d 156,2003-Ohio-3048, 789 N.E.2d 1094, the Supreme Court of Ohio explained how, in Preferred Risk Ins. Co. v. Gill, supra, the court had distinguished Willoughby Hills, and in doing so, recognized that the courts will not ignore the substance of a complaint:
 In [Gill] the insurance company sought a declaratory judgment that it had no duty to defend an insured against a tort claim framed in terms of negligence brought by the parents of a child murdered by the insured. The insurance company denied coverage because the policy in question expressly excluded coverage for any intentional act, and intent was an element of the crime of which the insured had been convicted.
 [The Supreme Court of Ohio] held that allegations in the complaint did not justify the application of the Willoughby Hills rule by stating, "Where the conduct which prompted the underlying * * * suit is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend or indemnify its insured simply because the underlying complaint alleges conduct within coverage." In distinguishing Preferred Risk from Willoughby Hills, [the court] also observed that unlike the policy in Willoughby Hills, the Preferred Risk policy did not contain language promising to defend the insured against groundless, false, or fraudulent claims.
Id. at ¶ 20-21. (Citations omitted.)
 {¶ 24} Appellee argues that even under Willoughby Hills the McDonnell litigation is indisputably outside coverage and does not contain claims that are arguably within the scope of coverage. Appellee points out that the allegations of the McDonnell complaint focus solely upon false statements to McDonnell (not to third parties) that induced McDonnell (not third parties) to act; a contract to which the only parties are McDonnell and appellants; and harassment and coercion constituting a constructive discharge of McDonnell. Appellee argues that because there are no allegations of falsity or of publication to others, it is not even arguable that McDonnell is claiming libel, slander or disparagement of his services.[1]
 {¶ 25} Appellee asserts that damage to reputation is but one of several types of damage that McDonnell alleges flowed from appellants' fraud, breach of contract and wrongful discharge of him. That McDonnell may have suffered the negative consequence of damage to reputation does not transform the allegations into claims sounding, even arguably, in libel, slander or disparagement of services.
 {¶ 26} We agree. The allegations in the McDonnell complaint do not state a claim that could even arguably fall within the policy coverage because they clearly involve fraud, breach of contract and wrongful discharge, not defamation or disparagement. The allegations involve actions by CVSA that, if true, would constitute fraudulent misrepresentations to McDonnell, failure to perform under a contract with McDonnell, and unlawful discharge of McDonnell. However, the allegation that McDonnell's reputation was harmed does not involve actions of appellants that are intentionally disparaging, such as would implicate coverage under a disparagement-of-services theory; it involves only a consequential effect of appellants' fraud, breach of contract and wrongful discharge.
 {¶ 27} In analyzing whether a duty to defend has been triggered, it is appropriate to examine the allegations regarding the conduct of theinsured, not the allegations pertaining to the detrimental effects ofthat conduct experienced by the plaintiff. For example, inCincinnati Ins. Co. v. Anders, 99 Ohio St.3d 156, 2003-Ohio-3048,789 N.E.2d 1094, the Supreme Court of Ohio determined that the duty to defend had not been triggered when the underlying complaint alleged that the insured had negligently failed to disclose to the plaintiff-buyers certain damage to a piece of property. The question before the court was whether the complaint triggered a duty to defend under the homeowner's policy's coverage for occurrences involving property damage. The court reasoned that no duty to defend was triggered because the underlying lawsuit was based upon the insureds' nondisclosure of the property damage, not upon the insureds' having actually caused the property damage. The fact that the plaintiff-buyers sought to recover the costs they incurred in repairing the property damage did not transform the lawsuit into one involving property damage; ultimately the underlying suit was about nondisclosure. Thus, the court held, because "[t]he underlying claims of the [plaintiffs] against the [insureds] pertain to the nondisclosure of the damage, not the damage itself [,] * * * the underlying claims are outside the scope of the * * * policy." Id. at ¶ 36.
 {¶ 28} Applying the same analysis in the present case yields the conclusion that the McDonnell litigation does not trigger a duty on appellee's part to defend or to advance the costs of a defense. The complaint involves claims that CVSA engaged in fraud, breach of contract and wrongful discharge, but does not involve claims that CVSA disparaged McDonnell's services. The fact that the complaint alleges that, as a consequence of the alleged fraud, breach of contract and wrongful discharge, McDonnell suffered damage to his reputation, does not transform the complaint into one alleging defamation or disparagement. Accordingly, the McDonnell litigation is outside the scope of the policy. For this reason, appellants' first, third and fourth assignments are overruled.
 {¶ 29} In support of their second assignment of error, appellants argue that the trial court erred in concluding that the policy's employment-related practices exclusion operates to exclude the McDonnell litigation from coverage. Appellants argue that injury to reputation is a separate tort, unconnected to the fact that McDonnell had an employment relationship with CVSA, and that this tort is not excluded from coverage.
 {¶ 30} First, we have already determined that McDonnell's allegations that he suffered injury to reputation do not allege a separate cause of action. Accord, Burton v. Memorial Ops. Co. of Ohio (July 13, 2001), 11th Dist. No. 2000-A-0042. Rather, they are an element of his prayer for damages.
 {¶ 31} Second, the pertinent provision excludes from coverage any "personal injury" to a "person arising out of any * * * termination of that person's employment; or * * * [e]mployment-related practices, policies, acts or omissions, such as coercion * * * harassment, [or] humiliation * * *." This exclusion clearly encompasses the fraud and wrongful discharge claims because these claims involve fraudulent inducement to enter into an employment agreement, and wrongful termination accomplished through coercion and harassment, as well as other "acts or omissions" including intimidation and requiring McDonnell to undertake impossible tasks (i.e., failure to assign any physicians to assist McDonnell in discharging the contractual obligations that Genesis and CVSA owed to Zanesville Hospital.)[2] Thus, the employment-related practices exclusion does exclude from coverage the fraud and wrongful discharge claims in the McDonnell litigation.[3] Accordingly, appellants' second assignment of error is overruled.
 {¶ 32} Having overruled all of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BROWN, JJ., concur.
[1] Appellants have confined their argument for coverage solely to "disparagement of services" and have not argued on appeal that McDonnell pled causes of action for libel or slander. However, appellee's argument in this appeal includes discussion of the entire definition of "personal injury" under section 13(d) of the policy.
[2] See McDonnell Complaint, at 9.
[3] Appellants have not disputed that the breach of contract claim is excluded from coverage.