OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendants-Appellants, X.L. Sand and Gravel Company and Michael, Kristen, Raymond, and James Lansberry, appeal the decision of the Columbiana County Court of Common Pleas that found that Plaintiff-Appellee, Erie Insurance Exchange, had no duty to defend Appellants in two cases pending in Columbiana County, Case Nos. 895 and 1027.
 {¶ 2} On appeal, Appellants argue that the claims in those underlying cases fall within the scope of coverage of Erie's policies with them and, therefore, Erie has the duty to defend them in each of those cases. However, they are incorrect. The claims in Case No. 895 are excluded because the injuries occurred to an employee in the course of his employment. The claims in Case. No. 1027 are excluded by the intentional acts exclusion in the insurance policy. Accordingly, the trial court properly concluded that Erie had no duty to defend Appellants in either of those cases. The trial court's decision is affirmed.
 Facts {¶ 3} This case is a declaratory judgment case arising out of a conflict in the Lansberry family, which owns and operates XL. The company was run mainly by three brothers. They and their wives owned the land used by XL in its operations jointly. Eventually, there was a falling out between the brothers and two of them froze the other brother and his family out of the business's management.
 {¶ 4} As a result of that dispute, two of the brothers would not let the third brother, Robert, or his wife, Reva, on the property. Reva at one time tried videotaping operations at XL and her camera was destroyed by another Lansberry. As a result of these events, Robert and Reva sued Appellants, thereby instituting Case. No. 1027, claiming breach of fiduciary duty, conversion, civil conspiracy, intentional infliction of emotional distress, and spoliation of evidence.
 {¶ 5} During this time, Robert and Reva's son, Robert, Jr., was injured by Michael Lansberry at XL. Robert and his wife filed Case No. 895, claiming assault, battery, civil conspiracy, vicarious liability, employer intentional tort, and loss of consortium. *Page 3 
 {¶ 6} Appellants submitted these claims to Erie, which had a general commercial policy with XL. Erie argued it had no duty to defend either lawsuit, claiming that any potentially covered injuries were excluded by various exclusions. It instituted this case, seeking a declaratory judgment that it had no duty to defend Appellants in these and two other cases. The trial court found there was no duty to defend in the two cases which are not the subject of this appeal.
 {¶ 7} Eventually, the parties filed cross-motions for summary judgment. The trial court concluded that all of the claims in both of the complaints fell outside the scope of coverage and, therefore, Erie did not have the duty to defend Appellants in either Case No. 895 or 1027.
 Standard of Review {¶ 8} In this case, Appellants raise two assignments of error, both of which argue that Erie did not have a duty to defend Appellants in either of the lawsuits that are the subject of this litigation for multiple reasons and the trial court granted summary judgment to Erie on this issue. When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186. A fact is material when it affects the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304.
 {¶ 9} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in her favor. Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 386. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a *Page 4 
material element of the nonmoving party's claim." Dresher v. Burt,75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 10} In cases like this, where there are potentially multiple reasons in support of the trial court's judgment, we must affirm the trial court's judgment as long as it reached the right result, no matter what its rationale. Cowett v. TCH Pediatrics, Inc., 7th Dist. No. 05 MA 138, 2006-Ohio-5269, at 20, citing Agricultural Ins. Co. v.Constantine (1944), 144 Ohio St. 275, 284.
 Policy Language {¶ 11} The insurance policy in this case provides three different types of insurance: 1) for "bodily injury" and "property damage" described in Coverage A; 2) for "personal and advertising injuries" under Coverage B; and, 3) umbrella coverage for the "ultimate net loss in excess of the retained limit" of the insurance provided by the other coverage.
 {¶ 12} The parties agree that Coverage B does not apply to this case. The types of injuries it provides coverage for are false arrest, malicious prosecution, wrongful eviction, libel and/or slander, privacy violations, copyright violations, and advertising torts. Policy Section I Coverage B(1)(a); Section V(14). Furthermore, there does not appear to be any dispute regarding the scope of Coverage U. Coverage U does not extend coverage, it merely extends the limits of the coverage already provided in Coverage A and B. Thus, if the allegations in Case No. 895 are not covered by Coverage A, then they are not covered by Erie.
 {¶ 13} Coverage A covers "bodily injury" caused by an "occurrence" that takes place in the "coverage territory" and falls within the policy period. Policy Section I Coverage A(1)(b). The policy specifically excludes "`[b]odily injury' * * * expected or intended from the standpoint of the insured. This exclusion does not apply to `bodily injury' resulting from the use of reasonable force to protect persons or property." Policy Section I Coverage A(2)(a). It also excludes bodily injury to any employee arising out of and in the course of either their employment or the performance of duties related to the conduct of the insured's business. Policy Section I Coverage A(2)(e)(1). *Page 5 {¶ 14} All employees are insureds under the policy. Policy Section II(2). However, employees are not insureds under the policy for any bodily injury "to a co-'employee' while in the course of his or her employment or performing duties related to the conduct of your business." Policy Section II(2)(a)(1)(a).
 Case No. 895 {¶ 15} In their first assignment of error, Appellants argue:
 {¶ 16} "The trial court erred in determining Appellee Erie insurance Exchange had no duty to defend Appellants XL Sand Gravel Company, Raymond Lansberry, James Lansberry and Michael Lansberry in the `895 case', also known as Columbiana County Common Pleas Case No. 04 CV 895."
 {¶ 17} In this case, Erie argues that it had no duty to defend Appellants in Case No. 895 for two main reasons: 1) Appellants' actions were intentional and malicious and insurance for such actions are precluded by public policy and an exclusion in the contract and 2) Appellants were acting in the course and scope of their employment when they were injured and, therefore, the claim falls within a policy exclusion and Appellants do not qualify as insureds under the policy. If any one of these are true, then the claims in that suit are outside the scope of coverage and Erie has no duty to defend Appellants in that suit.
 Duty to Defend {¶ 18} An insurer's duty to defend is both separate and distinct from and broader than its duty to indemnify. Socony-Vacuum Oil Co. V.Continental Cas. Co. (1945), 144 Ohio St. 382, paragraph one of the syllabus; Erie Ins. Exchange v. Colony Dev. Corp. (1999),136 Ohio App.3d 406, 412; Red Head Brass, Inc. v. Buckeye Union Ins. Co. (1999),135 Ohio App.3d 616, 625. "As long as the complaint contains some claim which is arguably within the scope of the policy coverage, the insurer is obliged to defend the insured." Red Head Brass at 625, citingSanderson v. Ohio Edison Co., 69 Ohio St.3d 582, 1994-Ohio-0379, paragraph one of the syllabus. Once it is determined there is no possibility of coverage under the policy based on the allegations in the complaint, an insurer no longer has the duty to defend the insured.Wedge Products, Inc. v. Hartford *Page 6 
 Equity Sales Co. (1987), 31 Ohio St.3d 65, 67-68.
 {¶ 19} In Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, the Ohio Supreme Court held that courts should look to more than the mere allegations in the complaint to determine whether an insurance company has the duty to defend its insured. "[W]here the conduct which prompted the underlying [lawsuit] is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend or indemnify its insured simply because the underlying complaint alleges conduct within coverage." Id. at 113. The parties dispute whether this principle is still good law in Ohio because the Ohio Supreme Court, in a later, one-sentence opinion, stated that Gill was "limited to its facts," Cincinnati Ins. Co. v. Colelli Assoc, Inc., 95 Ohio St.3d 325,2002-Ohio-2214, at ¶ 1, but used it to decide a case the very next year. See Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d 156, 2003-Ohio-3048, at ¶ 21, 51. This dispute is premised on the mistaken presumption that a case is no longer good law because it has been limited to its facts.
 {¶ 20} When a court limits a case to its facts, it does not overrule that case. Instead, it shows that the court does not want the principles in that case to be extended to new areas of law. For instance, inHyatt v. Neaton Auto Products Mfg., Inc. (1995), 103 Ohio App.3d 591, the appellant filed a complaint alleging she had been wrongfully discharged in retaliation for filing a workers' compensation claim, but the trial court granted summary judgment to the appellee. On appeal, the appellant argued that an Ohio Supreme Court decision provided her with a common law cause of action for retaliatory discharge. In that decision, the Ohio Supreme Court held that an employee of a self-insured employer who had not filed his complaint within the limitations period provided by the workers' compensation statute could, nevertheless, maintain a cause of action against the employer for the intentional and wrongful termination of workers' compensation payments. The Hyatt court found that the Ohio Supreme Court's case was "limited on its facts" and would "apply only when an employer intentionally terminates the workers' compensation payments to the injured employee," thereby refusing to extend the holding to other types of claims. Id. at 594. *Page 7 
 {¶ 21} Similarly, the court in Bowman v. Holcomb (1992),83 Ohio App.3d 216, noted that another decision was "limited to its facts." Id. at 220. In that case, the appellants were arguing that the word "sickness" in an automobile insurance contract's definition of "bodily injury" was ambiguous. In a prior case, a court had found the phrase "any one sickness" to be ambiguous in regard to whether the metastasis of a cancerous tumor to another part of the body was the same sickness.Bowman found the prior case distinguishable, noting that the context within which the word "sickness" was used in the two contracts was vastly different.
 {¶ 22} In Colelli and Anders, the Ohio Supreme Court made it clear that Gill was still good law. However, the Court was also clear that the principles it relied upon in Gill should be limited to cases which are substantially similar to Gill, a case where the Ohio Supreme Court found it was indisputable that the claim was outside of coverage since the policy excluded intentional acts and the insured had pleaded guilty to murder. As the Court said in Anders, "it is still the law that if the conduct alleged in a complaint is indisputably outside the scope of coverage, there is no duty to defend." Id. at ¶ 51.
 {¶ 23} The complaint in Case No. 895 alleges that Raymond, James, and Michael were all employees of XL and that Raymond and James were in charge of XL's operations. It further alleges that "Raymond ordered or otherwise sent Defendant Michael to attack Robert" and that Michael did so. Other employees allegedly tried to restrain Michael from further attacking Robert, but Raymond encouraged further attacks and Michael did so. James allegedly knew that the attacks were going to occur, condoned them, and did nothing about it. According to the complaint, Robert neither provoked nor consented to the attack.
 {¶ 24} The complaint specifically set forth seven causes of action: 1) assault; 2) battery; 3) civil conspiracy; 4) vicarious liability; 5) employer intentional tort; 6) punitive damages; and, 7) loss of consortium. Some of these causes of action are, of course, derivative of others. The primary causes of action are, therefore, assault, battery, civil conspiracy, and employer intentional tort, all of which are intentional torts. In their answer, the defendants in that suit alleged that Robert initiated the altercation, that they *Page 8 
were acting in self-defense, and counterclaimed for damages.
 Intentional Acts Exclusion {¶ 25} Erie first argues that the claims in Case No. 895 are not covered by the policy because those damages were caused by the intentional acts of its insureds and, therefore, are excluded from coverage. However, this argument ignores the second sentence of that exclusion, which states that the exclusion for intentional acts does not apply if the injury resulted from the use of reasonable force to protect persons or property.
 {¶ 26} In this regard, this case is like Erie Ins. Co. v. Stalder
(1996), 114 Ohio App.3d 1. In that case, there had been a physical altercation between the owner of a business and its customer while the owner was working at the business. The customer sued the business and its owner, claiming that he was intentionally assaulted. In their answer, the business and its owner asserted that the owner had acted in self-defense, in that the customer battered him before the owner retreated and then retaliated. The business's insurer then instituted a declaratory action, asserting that it had no duty to defend the business and its owner.
 {¶ 27} The policy in that case excluded any "injury or damage expected or intended from the standpoint of anyone we protect." Id. at 5. However, it specifically stated that this exclusion "does not apply to personal injury or property damage resulting from your protecting persons or property." Id. The Third District found that this exclusion did not apply to the customer's lawsuit since the owner had alleged that he had used self-defense in his answer. "[T]he policy exclusion stated above would not apply in the present situation because [the owner] acted in self-defense. The policy exclusion expressly states that it is inapplicable if the injury or damage caused is a result of the insured protecting persons or property." Id. at 5.
 {¶ 28} The same reasoning applies here. Appellants have alleged that they acted in self-defense in their answer to the complaint in Case No. 895. Thus, the exclusion for intentional acts does not prevent Erie from satisfying its duty to defend its insureds from that lawsuit and Erie's arguments in this regard are meritless.
 Scope of Employment *Page 9 {¶ 29} The main dispute between the parties with regard to Case No. 895 is whether the incident is excluded from coverage because it is covered under worker's compensation and whether Michael is an insured under the policy. The trial court, relying on facts outside those pleadings, found that Robert sustained the injuries in the course and scope of his employment. Since the policy excludes these types of injuries from coverage, the trial court found that Erie had no duty to defend Appellants under the policy. Appellants contend that the trial court should not have relied on facts outside the pleadings when reaching its decision. Erie argues that the trial court was allowed to look to those facts, but argues that the allegations in the complaint also show that the claim is not covered by the policy.
 {¶ 30} Most of the allegations in the complaint in Case No. 895 have nothing whatsoever to do with whether the bodily injury occurred in the scope of Robert's employment. However, in their fifth claim, the plaintiffs in Case No. 895 allege an employer intentional tort. The complaint states:
 {¶ 31} "31. Defendant XL knew or should have known that encouraging and allowing some employees to attack or fight other employees and/or exposing employees to attacks or fights at the hands of other employees causes a dangerous process, procedure, instrumentality, or condition within its business operation to exist.
 {¶ 32} "32. Defendant XL had knowledge that if an employee such as Robert was exposed or subjected to an attack or fight at the hands of another employee, then harm to Robert was substantially certain.
 {¶ 33} "33. Defendant XL, with such knowledge, kept Robert exposed, vulnerable, and subject to attacks at the hands of Defendant Michael.
 {¶ 34} "34. Defendant XL, with such knowledge, failed to take any appropriate action to prevent harm to Robert before and during the attacks."
 {¶ 35} These allegations match the elements of an employer intentional tort, which require that the plaintiff establish facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded. *Page 10 Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 90, syllabus; see alsoFyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, syllabus (In order to demonstrate "intent" for the purposes of an employer intentional tort, the employee must normally demonstrate 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operations; 2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and, 3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.).
 {¶ 36} In Penn Traffic Co. v. AIU Ins. Co., 99 Ohio St.3d 227,2003-Ohio-3373, at ¶ 42, the Ohio Supreme Court held that an insurance contract which expressly excluded coverage for bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured" did not cover an employer's liability for substantially-certain intentional torts. The court held that "[although an employer intentional tort occurs outside the employment relationship for purposes of recognizing a common-law cause of action for intentional tort, the injury itself must arise out of or in the course of employment; otherwise, there can be no employer intentional tort." Id. at 40. Thus, any claim for an employer intentional tort alleges that the injury arose out of or in the course of employment. The court then held that language in an employer's insurance policy which excludes injuries which "arise out of or in the course of employment" applies to all injuries which are "causally related to one's employment." Id. at ¶ 41. Since an employer intentional tort must "arise out of or in the course of employment," it is going to be "causally related" to employment. Thus, this type of exclusion will apply to any claim for an employer intentional tort.
 {¶ 37} In this case, the allegations in the complaint show that the claims are excluded by the policy. Thus, we do not need to determine whether the trial court properly inquired into the "true facts" of this case. The trial court properly concluded that the claims in Case No. 895 were not covered by Appellants' insurance contract with Erie. Accordingly, Appellants' first assignment of error is meritless. *Page 11 
 Case No. 1027 {¶ 38} In their second assignment of error, Appellants argue:
 {¶ 39} "The trial court erred in determining Appellee Erie insurance Exchange had no duty to defend Appellants, XL Sand Gravel Company, Raymond Lansberry, James Lansberry, Kristen Lansberry and Michael Lansberry in the `Reva case' also known as Columbiana County Common Pleas Case No. 04 CV 1027."
 {¶ 40} Appellants claim the complaint in Case No. 1027 alleges "property damage," "bodily injury," and "personal injury," as those terms are defined in the insurance policy, and, therefore, Erie had a duty to defend them in that case. They believe this conclusion is bolstered by the jury's findings in the trial in Case No. 1027.
 {¶ 41} As stated above, courts must look to the pleadings in a lawsuit in order to determine whether the insurer has a duty to defend its insured in that lawsuit and there is no duty to defend if there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage. Red Head Brass at 625;Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 605, 1999-Ohio-0322. Thus, the insurer's duty to defend is not determined by the action's ultimate outcome or the insurer's ultimate liability.Motorists Mut. Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41, paragraph two of the syllabus.
 {¶ 42} Importantly, courts will not imply that a cause of action has been pled in a complaint merely because the allegations in the complaint indicate that another cause of action might have happened. For example, in Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn.,Inc. (2001), 141 Ohio App.3d 269, 279, the complaint in the underlying case stated causes of action for violations of antitrust and monopoly. The insured argued that it was covered because the complaint also alleged disparagement and defamation, stating that "it only made sense" that these torts occurred, given the other allegations in the complaint. The appellate court rejected that argument, stating that the complaint must state the causes of action which fall within the scope of coverage, not merely imply those causes of action. See also Cardiothoracic Vascular Surgical Specialists, Inc. v. Travelers Indem. Co., 10th Dist. No. 05AP-1355, 2006-Ohio-6947, *Page 12 
at ¶ 26 (Allegation of damage to reputation not enough to bring complaint within scope of coverage since this allegation, alone, was insufficient to plead a cause of action).
 {¶ 43} Appellants claim that the complaint alleges bodily injury, which clearly falls within the scope of coverage. In support of this argument, Appellants point to paragraphs 118, 124, and 125 of the complaint. Appellants also claim that the complaint alleges property damage, citing paragraphs 120 and 127 of that complaint. All of these paragraphs, other than paragraph 127, fall within the plaintiffs' claims for intentional infliction of emotional distress. That claim alleges, in toto:
 {¶ 44} "114. Plaintiff re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.
 {¶ 45} "115. Defendants intentionally and maliciously effectuated the squeeze-out of Robert and Reva Lansberry from the Joint Enterprise.
 {¶ 46} "116. Defendants intentionally and maliciously stopped paying Robert and Reva Lansberry their share of the Joint Enterprise.
 {¶ 47} "117. Defendants intentionally, maliciously, and improperly excluded Reva Lansberry from having access to her own property.
 {¶ 48} "118. Defendants intentionally and maliciously assaulted and battered Reva Lansberry.
 {¶ 49} "119. Defendants intentionally and maliciously assaulted and battered Robert Lansberry, and other members of Reva Lansberry's family.
 {¶ 50} "120. Defendants intentionally and maliciously stole and destroyed Reva Lansberry's video camera with the intended purpose of destroying evidence.
 {¶ 51} "121. Defendants intentionally and maliciously refused to institute sequentially numbered gate slips and institute accounting controls to protect and properly account for Reva's interest in the property.
 {¶ 52} "122. Defendants intentionally and maliciously hid and destroyed corporate sales and accounting records.
 {¶ 53} "123. Defendants' conduct is outrageous, atrocious, and intolerable and goes beyond all possible bounds of decency, and further it is particularly outrageous in *Page 13 
light of Defendants' fiduciary responsibilities owed to plaintiff.
 {¶ 54} "124. Defendants intended their actions to cause plaintiff to suffer extreme emotional distress.
 {¶ 55} "125. Because of defendant's [sic] conduct, plaintiff suffered from mental anguish, nervous shock, embarrassment, shame and humiliation and has been required to undergo medical treatment in order to overcome the emotional distress that she has suffered."
 {¶ 56} As can be seen, these allegations do allege both bodily injury (assault and battery) and property damage (the destruction of the video camera). However, the complaint alleges that both of these injuries resulted from Appellants' intentional acts and the intentional acts exclusion specifically excludes these claims from the scope of coverage.
 {¶ 57} Similarly, paragraph 127 of the complaint references the destruction of the video camera, but does so in the context of spoliation of evidence. That cause of action in the complaint alleges, in toto:
 {¶ 58} "126. Plaintiff re-alleges the foregoing allegations and incorporates them by reference as if fully set forth herein.
 {¶ 59} "127. Kristen destroyed Reva's video camera.
 {¶ 60} "128. It is believed and therefore averred that Defendants have conspired to destroy sales and accounting records, and have destroyed sales and accounting records.
 {¶ 61} "129. Defendants' implementation and use of non-sequentially numbered gate slips constitutes destruction of audit and accounting records and constitutes spoilage of evidence."
 {¶ 62} In order to prove a spoliation of evidence claim, a plaintiff must show, among other things, that the defendant willfully destroyed evidence in order to disrupt the plaintiff's case. Smith v. HowardJohnson Co., Inc. (1993), 67 Ohio St.3d 28, 29, 1993-Ohio-0229. Furthermore, the complaint clearly alleges that the destruction of the camera was "intentional and malicious." These acts clearly fall within the intentional acts *Page 14 
exclusion.
 {¶ 63} Appellants next argue that the complaint alleged a "personal injury," namely wrongful eviction, and that this claim falls within the scope of coverage, but their arguments are mistaken. As the Fourth District explained in Manifold v. Schuster (1990), 67 Ohio App.3d 251,259, an eviction happens when a landlord dispossesses a tenant of access to a premises. A claim for wrongful eviction claims that the landlord did not have the legal right to take such an action. In this case, the complaint alleges that Robert and Reva co-owned the property with Appellants and that Appellants' wrongfully prohibited them from entering the property. Simply stated, these allegations cannot form the basis for a wrongful eviction claim because they never claim that an eviction ever took place.
 {¶ 64} Appellants' arguments about allegations of "bodily injury," "property damage," and "personal injury" are all mistaken because they focus on a single alleged fact, rather than the alleged causes of action. However, it is the cause of action, not a single fact, which brings a claim within the scope of coverage. Thus, these arguments advanced by Appellants are all meritless.
 {¶ 65} Appellants next argue that the complaint's claim for conversion falls within the scope of coverage and, therefore, Erie had the duty to defend. In order to prove a conversion claim, a plaintiff must prove the following three elements: 1) plaintiff's actual or constructive possession or immediate right to possession of the property; 2) defendant's wrongful interference with plaintiff's rights; and 3) damages. Allied Erecting Dismantling Co., Inc. v. Youngstown,151 Ohio App.3d 16, 2002-Ohio-5179, ¶ 76. Many courts have stated that conversion is an intentional tort. See Geiger v. King, 158 Ohio App.3d 288,2004-Ohio-4227, at ¶ 8; Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 301-302; Hinkle v. Cornwell Quality Tool Co. (1987),40 Ohio App.3d 162, 165; Karlen v. Carfangia (June 2, 2001), 11th Dist. No. 2000-T-0081, at 7.
 {¶ 66} In Estate of Alkhaldi v. Khatib, 7th Dist. No. 04 MA 285,2005-Ohio-6168, at ¶ 19, we said that "[w]rongful purpose or intent is not a necessary element; one is liable for conversion even if he acted under a mistaken assumption." This statement emphasizes that conversion law is not concerned with whether the alleged tortfeasor *Page 15 
intended to interfere with the property owner's rights. Thus, both a defendant who has taken a vehicle with the intent to permanently dispossess its owner and a defendant who merely borrows the vehicle from the owner and, due to a mistake, does not return it in a timely fashion have converted the vehicle.
 {¶ 67} This statement in Alkhaldi does not disagree with those courts that find conversion is an intentional tort. All it is doing is clarifying what intent those other courts are talking about. Courts should focus on whether the defendant intended the act which interfered with the owner's property rights, not on whether the defendant intentionally interfered with those property rights.
 {¶ 68} Since conversion is an intentional tort, it is also excluded under the intentional acts exception. Moreover, the complaint would dictate this result anyway, since it alleged that Appellants "intentionally, maliciously and improperly" interfered with Reva's property rights. Thus, this claim does not give rise to a duty to defend.
 {¶ 69} As both parties state, this case went to trial and the jury answered special interrogatories submitted by Erie. Appellants acknowledge that these findings do not affect this court's decision on the issue of whether Erie owes Appellants a duty to defend in that case, but argue that they support a conclusion that there is a duty to defend. Erie then responds that those findings show that there is no duty to defend.
 {¶ 70} As stated above, an insurer's duty to defend is not determined by the action's ultimate outcome. Motorists Mut. at paragraph two of the syllabus. Thus, these special interrogatories do not have any effect on the issues the parties are arguing to this court. They should, therefore, be disregarded.
 {¶ 71} In conclusion, Appellants point to many alleged injuries which could fall within the scope of coverage. However, an insurer only has a duty to defend if a cause of action, not an injury, falls within the scope of coverage. Furthermore, the only claim which arguably could fall within the scope of coverage, conversion, is excluded from coverage both by the intentional acts exclusion and the exclusion for property damage to Appellants' own property. Thus, the trial court property determined that Erie had no duty to defend Appellants in Case No. 1027. Appellants' second assignment of error is *Page 16 
meritless.
 Conclusion {¶ 72} In this appeal, Appellants argue that Erie has the duty to defend them in two cases, Case Nos. 895 and 1027. However, they are incorrect. The claims in Case No. 895 are excluded because the injuries occurred to an employee in the course of his employment and the claims in Case. No. 1027 are excluded by the intentional acts exclusion. Accordingly, the trial court properly concluded that Erie had no duty to defend Appellants in either of those cases. The judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1